RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0276p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

TYNISA WILLIAMS; SHAWN BEALER,

        *Plaintiffs-Appellants,*

    *v.*

CITY OF CLEVELAND,

        *Defendant-Appellee.*

No. 13-4162

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:09-cv-02991—Benita Y. Pearson, District Judge.

Argued: October 3, 2014

Decided and Filed: November 10, 2014

Before: SILER, CLAY, and GRIFFIN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Elmer Robert Keach, III, LAW OFFICES OF ELMER ROBERT KEACH, III, PC, Amsterdam, New York, for Appellants. Alejandro V. Cortes, CITY OF CLEVELAND DEPARTMENT OF LAW, Cleveland, Ohio, for Appellee. **ON BRIEF:** Elmer Robert Keach, III, LAW OFFICES OF ELMER ROBERT KEACH, III, PC, Amsterdam, New York, Nicholas Migliaccio, WHITFIELD, BRYSON & MASON, LLP, Washington, D.C., Daniel Karon, GOLDMAN, SCARLATO, KARON & PENNY, PC, Cleveland, Ohio, for Appellants. Alejandro V. Cortes, Thomas J. Kaiser, Jennifer Meyer, CITY OF CLEVELAND DEPARTMENT OF LAW, Cleveland, Ohio, for Appellee.

1

—————————————

**OPINION**

—————————————

GRIFFIN, Circuit Judge.  This appeal boils down to one question:  whether a complaint states a constitutional claim when it alleges that defendant's jail, instead of using less invasive procedures, compelled pretrial detainees who were being processed into the facility to undress in the presence of other detainees and to have their naked genitals sprayed with delousing solution from a pressurized metal canister.  We hold that such allegations plausibly allege a violation of the Fourth Amendment.  We therefore reverse the district court's contrary conclusion and remand the case for further proceedings.

I.

Late in 2009, Tynisa Williams filed a putative class action against Cleveland, alleging that she and other similarly situated pretrial detainees had been deprived of their constitutional rights when they were subjected to mandatory strip searches and delousing upon entry to the City of Cleveland House of Correction (the "jail") without any individualized suspicion that they were concealing contraband or were infected with lice.  Williams requested relief under 42 U.S.C. § 1983, asked for a declaratory judgment that the jail's practices were unconstitutional, and sought preliminary and permanent injunctions against the jail's conduct.  Cleveland filed an answer, and motions practice and discovery ensued, including a motion filed by Williams for leave to amend her complaint to add an additional class representative.

In mid-2011, however, the United States Supreme Court granted a writ of certiorari to resolve a circuit split over whether pretrial detainees could be strip searched as a matter of course upon entry into a correctional facility absent individualized suspicion that each detainee who was searched was concealing contraband.  *See Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 131 S. Ct. 1816 (2011).  Cleveland moved the district court to stay Williams's putative class action until *Florence* was resolved, and the district court granted its motion.

The *Florence* decision was handed down in 2012.  It answered the question of whether a blanket policy of strip searching incoming inmates was constitutionally sound, holding that the

"undoubted security imperatives involved in jail supervision override the assertion that some detainees must be exempt from the more invasive search procedures at issue absent reasonable suspicion of a concealed weapon or other contraband." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S. Ct. 1510, 1518 (2012). Shortly after *Florence* was decided, the district court lifted the stay of Williams's putative class action, simultaneously granting Williams's pending motion to file an amended complaint to add an additional class representative.

After filing an answer to the amended complaint, Cleveland moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that all of plaintiffs' claims about the jail's delousing intake procedure were foreclosed by the Supreme Court's holding in *Florence*. Opposing Cleveland's motion, plaintiffs filed a motion asking for leave to file a second amended complaint that would clarify the distinguishability of *Florence*.

Plaintiffs' proposed second amended complaint asserted § 1983 claims on a putative class basis against Cleveland by two named plaintiffs: Williams and Shawn Bealer. According to the complaint, Cleveland has a policy of strip searching and delousing every person who enters the custody of the jail, regardless of whether jail officials have any reasonable suspicion that the detainee has lice. Detainees must remove their clothing in the presence of a correctional officer, who then sprays delousing solution from a pressurized metal canister on the detainee's naked body, including on the detainee's exposed genitals. Cleveland officials allegedly referred to this procedure as the "hose treatment."

Williams, according to the proposed complaint, was arrested in late 2009 on non-felony charges of driving with a suspended license. Allegedly, her license had been suspended because she failed to pay a traffic ticket. After Williams made arrangements with authorities to pay her traffic ticket and fines, she was processed into the jail. There, she was instructed to undress and shower in the presence of not only a corrections officer but also two other female detainees. Then, in the presence of the other detainees, Williams was subjected to a visual body cavity search, during which she was instructed to bend at the waist and spread her buttocks. While she was bent over, an officer sprayed her with delousing solution from an exterminator can all over her naked body, including into her anus. There was no indication at any time that Williams was

harboring lice.  Williams was released from the jail the same day, given that her fines had been paid.

Bealer, alleged the proposed amended complaint, was arrested and placed in the jail twice:  in early 2008 and in early 2009.  Both times, Bealer had been arrested on non-felony charges (his driver's license, too, had been suspended for failing to pay traffic-related fines), and both times he was sprayed with delousing solution, despite the fact that he was devoid of any indication that he was infected by lice.  The first time he was processed into the jail, his naked body was sprayed with delousing solution by a correctional officer.  The second time, claims Bealer, he was sprayed—while naked—with the solution by a fellow inmate, who then kept Bealer in view during his subsequent shower.

Plaintiffs' proposed second amended complaint clarified that they "not only complain about the use of delousing on all detainees, but also about the manner in which the delousing occurs."  In particular, the proposed filing alleged that Cleveland violated detainees' constitutional rights by spraying delousing agent all over their naked bodies, "specifically aim[ing]" it at their genitals, instead of using less invasive delousing methods, such as permitting detainees to apply the delousing solution to themselves.  Plaintiffs also alleged that their respective strip searches and delousing were unreasonable because they were conducted "in the presence of other detainees."  Thus, the proposed second amended complaint alleged not only that the jail lacked justification for the searches and seizures in the first place, but also that the particular manner in which the jail conducted its compulsory delousing regime was unreasonable, "given more dignified alternatives."  Based on these allegations, plaintiffs' proposed amended complaint asserted violations of their Fourth Amendment rights, requesting damages as well as declaratory and injunctive relief under § 1983.

Despite these new allegations, the district court denied plaintiffs' motion to file the proposed second amended complaint "because the amendment would be futile."  In the district court's view, the proposed filing did not assert a violation of a constitutional right because it "simply calls into question the manner in which the delousing occurs"—which, according to the district court, was inseparable from the inquiry that was precluded by *Florence*.  According to the district court, the difference between Cleveland's "hose treatment" and providing detainees

with the opportunity to self-apply delousing solution were "*de minimus* [sic] differences that do not materially alter the Fourth Amendment analysis."  The district court also held that "subjecting inmates to delousing in front of other detainees is justified and not a violation of any individual rights."  Because it believed that granting plaintiffs leave to amend would be to "no avail," the district court denied plaintiffs' motion and granted Cleveland's motion for judgment on the pleadings.

Plaintiffs appeal, challenging both the denial of leave to file a second amended complaint and the entry of judgment on the pleadings.

## II.

The dispositive question in this appeal is whether the proposed second amended complaint stated a claim.  The district court's entry of judgment on the pleadings was predicated on its denial of plaintiffs' motion for leave to amend the complaint a second time.  The Federal Rules of Civil Procedure instruct district courts to "freely" grant parties leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  We typically defer to a district court's view of what equity requires in a specific case, so our review of the denial of a motion for leave to amend a complaint ordinarily is for an abuse of discretion.  *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003).

But there is an exception to this general rule, and it applies in this case.  Although the district court could have denied leave to amend for a variety of reasons, the reason that it gave for denying plaintiffs' motion was that the amendment would have been "futile."  When a district court denies a motion to amend because it concludes that the amendment would be futile, the basis for its denial of the motion is its purely legal conclusion that the proposed amendment "could not withstand a Rule 12(b)(6) motion to dismiss."  *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citation omitted); *see Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001).  Our review of that legal supposition—and, therefore, of the denial of the motion to amend—is de novo.  *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 596 (6th Cir. 2013).  As a result, the dispositive question in this case is whether plaintiffs' proposed second amended complaint contains "sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (internal quotation marks omitted).

We hold that it did. The district court's conclusion that plaintiffs' proposed filing failed to state a claim proceeded in two analytic steps. First, the district court concluded that *Florence* precluded plaintiffs' claims that it was unconstitutional to seize and search them for lice absent a particularized suspicion that they harbored lice. Second, it held that the particular manner in which plaintiffs alleged that they were seized and searched differed in only insignificant ways from the practices that were upheld in *Florence*. The district court was correct with respect to the first part of its analysis but mistaken about the second.

## A.

As *Florence* recognized, a regulation impinging upon a detainee's constitutional rights must be upheld "if it is reasonably related to legitimate penological interests." *Florence*, 132 S. Ct. at 1515 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). But although such a standard requires deference to the judgment of correctional officers, "we must not confuse deference with abdication." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 572 (6th Cir. 2013). Even "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," and "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).

Among these rights are the Fourth Amendment's guarantee of "reasonable expectations of privacy." *Stoudemire*, 705 F.3d at 572 (citation omitted). Although the jailhouse setting necessarily involves a significantly reduced expectation of privacy, the treatment of a detainee must still be reasonable under the circumstances in order to comport with the Fourth Amendment. *Bell*, 441 U.S. at 558. Any given search or seizure of a detainee may not arbitrarily or needlessly encroach upon the detainee's privacy rights but must instead be "reasonably related to legitimate penological interests." *Stoudemire*, 705 F.3d at 572.

The touchstone of whether a given search or seizure is reasonable is whether the jail's "need for the particular search" outweighs "the invasion of personal rights that the search

entails." *Bell*, 441 U.S. at 559; *Stoudemire*, 705 F.3d at 572. To this end, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559. If a correctional institution possesses no readily available alternative other than to engage in the particular conduct at issue, its conduct likely is reasonably related to its legitimate penological interests. *Turner*, 482 U.S. at 90. But where a particular search or seizure involves significant intrusion into a detainee's privacy interests, the existence of "obvious, easy alternatives . . . that fully accommodate[] the prisoner's rights at *de minimis* cost to valid penological interests" suggests that the institution's need to proceed in its chosen manner does not outweigh the burdens it imposes upon the detainee and is therefore unreasonable. *Id.* at 90–91.

*Florence*, far from recanting the principle that "[t]he need for a particular search must be balanced against the resulting invasion of personal rights," in fact reiterated it. 132 S. Ct. at 1516. In *Florence*, the plaintiff alleged that the jail's decision to strip search him was unreasonable not because it was conducted in an unreasonable manner but because it lacked sufficient justification; namely, that it was conducted absent individualized suspicion that he was concealing contraband. *See Bell*, 441 U.S. at 559 (noting that "the manner in which [the search] is conducted" and "the justification for initiating it" are two different aspects of whether a particular search is reasonable). In *Florence*, the plaintiff was subjected to a visual strip search (conducted by correctional officers "[a]pparently without touching the detainees") and was required "to shower with a delousing agent." 132 S. Ct. at 1514. The *Florence* majority rejected the plaintiff's assertion that individualized suspicion was necessary to submit him to the compulsory shower and visual strip search, ruling that the institutional "security imperatives" for conducting visual strip searches of everyone admitted to its facility without exception outweighed the intrusion into the detainees' rights. *Id.* at 1518.

As the district court recognized, *Florence* precludes any claim that the Cleveland jail's conduct was unconstitutional due to lack of individualized suspicion. And Cleveland is correct to observe that most of plaintiffs' protestations that the delousing procedure was unnecessary are beside the point. *Florence* clearly held that "[t]he danger of introducing lice or contagious infections . . . is well documented," such that a correctional facility's adoption of uniform

delousing procedures is an acceptable prophylactic measure that may be administered even in the absence of individualized suspicion that any particular detainee is infected with lice. 132 S. Ct. at 1518.

But nothing in *Florence* upends the long-standing rule that a search of a detainee, even if it does not need to be based upon individualized suspicion, still "must be conducted in a reasonable manner." *Bell*, 441 U.S. at 560. *See also United States v. Fowlkes*, __ F.3d __, 2014 WL 4178298, at *6 (9th Cir. Aug. 25, 2014) (observing that an otherwise justified strip search must be performed in a reasonable manner); *Evans v. Stephens*, 407 F.3d 1272, 1281 (11th Cir. 2005) (en banc) ("While searches need not be delicately conducted in the least intrusive manner, they must be conducted in a reasonable manner."). Put another way, the Fourth Amendment contemplates a discrete search; the reasonableness analysis may not interrogate abstractions but must center upon "the *particular* search" that has been or will be conducted. *Stoudemire*, 705 F.3d at 573 (citation omitted). *See also Bell*, 441 U.S. at 559 ("The test of reasonableness under the Fourth Amendment is not capable of . . . mechanical application.").

Recognizing this principle, *Florence* took pains to emphasize that its holding applied only to the blanket policy before it, which required a visual strip search and a compulsory shower with self-applied delousing solution. 132 S. Ct. at 1523. *Florence* specifically declined to decide whether any other particular mode of carrying out a blanket search policy would violate the Constitution. *Id.* The court observed, for example, that if an officer "engag[ed] in intentional humiliation [or] other abusive practices," the search of a particular detainee could be unreasonable, even if conducted pursuant to a uniformly applicable policy. *Id.* Further, noted the court, "[t]here also may be legitimate concerns about the invasiveness of searches that involve the touching of detainees"—a recognition that even a blanket search policy may be unreasonable if it calls for searches that are needlessly invasive. *Id.*; *see also id.* at 1523 (Roberts, C.J., concurring) ("[I]t is important for me that the Court does not foreclose the possibility of an exception to the rule it announces."); *id.* at 1524 (Alito, J., concurring) (emphasizing that the majority held only that "jail administrators may require all arrestees who are committed to the general population of a jail to undergo visual strip searches not involving physical contact by corrections officers." (emphasis deleted)).

Thus, as Cleveland implicitly recognizes, *Florence* does not stand for the proposition that every search conducted pursuant to a jail's uniformly applicable search policy is impregnable from attack on that basis alone. A strip search is "a particularly extreme invasion" of a detainee's Fourth Amendment rights, and holding that all detainees may be subjected to suspicionless visual strip searches upon entry into a correctional facility does not mean that the strip searches may be conducted in any manner whatsoever that the facility chooses. *Stoudemire*, 705 F.3d at 573. Simply "to say that [correctional officers] had a legitimate justification for searching, or even strip searching, [plaintiffs] does not conclude our inquiry." *Id*. Instead, if the search is conducted in a particularly invasive manner, despite the lack of exigent circumstances that necessitate the degree of invasion to which the detainee is subjected, then the search may be unreasonable by virtue of the way in which it is conducted. *See id*. at 574 ("[A]lthough [the defendant] had a valid reason for searching [the plaintiff], no special circumstances provided additional justifications for strip searching [the plaintiff] where others could see her naked.").

B.

As evidenced by the foregoing, to the extent that the district court believed that plaintiffs' proposed filing failed to state a claim because it "simply calls into question the manner in which the delousing occurs," it was proceeding from a false premise. At most, *Florence* stands for the proposition that every inmate who will be admitted to the general jail population may be (1) subjected to a visual strip search for contraband and (2) required to self-apply delousing agent even without individualized suspicion that she is concealing contraband or harboring lice. *Florence*, 132 S. Ct. at 1523. But about searches that are more invasive than those, *Florence* said nothing.

Cleveland nonetheless argues—and the district court found—that the particular acts about which plaintiffs complain differed from the contact-free delousing procedures and visual strip searches at issue in *Florence* in only irrelevant ways.

We disagree. As indicated, although *Florence* permits the jail to conduct a suspicionless search of plaintiffs upon their entrance to the jail, the search must be conducted in a manner that is reasonably related to the jail's legitimate objectives in discovering contraband and preventing the introduction of lice to the facility. *Stoudemire*, 705 F.3d at 573, 575; *see Bell*, 441 U.S. at

560. Because the focus must be on the jail's interest in carrying out the search and seizure in the particular manner that it chose, *see Florence*, 132 S. Ct. at 1516, the analysis in this case must balance the detainees' privacy rights against the jail's specific interest in spraying them with delousing agent from a pressurized canister while they crouched naked in the presence of other detainees instead of using less invasive procedures to achieve the same end.

1.

The district court, in dismissing plaintiffs' assertions as alleging conduct that was not relevantly different than the visual strip searches at issue in *Florence*, underappreciated how much more invasive the jail's conduct actually was. First, unlike in *Florence*, plaintiffs here allege a contact seizure rather than merely a visual search. Cleveland downplays the "hose treatment" as not involving physical touching by corrections officers themselves, but the distinction is unconvincing. Both Williams and Bealer allege that the corrections officers caused the spray to touch their genitals, even—in Williams's case—penetrating her anus. A visual strip search is "an offense to the dignity of the individual" that is "undoubtedly humiliating and deeply offensive to many," *Stoudemire*, 705 F.3d at 572–73 (citations omitted), and courts have uniformly recognized that a search in which officers intentionally contact a naked detainee causes still deeper injury to personal dignity and individual privacy. *See, e.g., Florence*, 132 S. Ct. at 1515 (emphasizing that "[t]here are no allegations that the detainees here were touched in any way as part of the searches"); *Fowlkes*, ___F.3d ___, 2014 WL 4178298, at *5 (noting that a search involving contact is much more invasive than a visual cavity search); *Watson v. Sec'y Pa. Dep't of Corr.*, 436 F. App'x 131, 136 (3d Cir. 2011) (same); *Leverette v. Bell*, 247 F.3d 160, 165 n.3 (4th Cir. 2001) (distinguishing between visual searches and contact searches).

The degree of humiliation suffered by plaintiffs should not be minimized solely on the basis that the officers touched plaintiffs with an intermediate object (a stream of liquid) rather than directly with their hands. *See, e.g., Evans*, 407 F.3d at 1281 (use of baton to search plaintiff's anus and genitals did not keep the search from being "disturbing"). According to plaintiffs, corrections officers intentionally caused physical contact to plaintiffs' naked genitals. The contact seizures here are substantially more invasive than the visual searches at issue in *Florence*, and the district court erred in eliding the differences between them.

Second, the proposed second amended complaint alleges that both Williams and Bealer were strip searched and sprayed in the presence of other detainees. We have already observed that "a strip search is more invasive when it is performed where other people can see the person being stripped." *Stoudemire*, 705 F.3d at 573 (strip search was performed without covering jail cell's window, meaning that passersby could see the plaintiff naked). The wider an audience for a strip search, the more humiliating it becomes, especially when the stripped individual is exposed to bystanders who do not share the searching officers' institutional need to view her unclothed. *See Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002) (opining that "the right not to be subjected to a humiliating strip search in full view of several (or perhaps many) others" is "well established"); *Amaechi v. West*, 237 F.3d 356, 362 (4th Cir. 2001) ("Whether the strip search was conducted in private is especially relevant in determining whether a strip search is reasonable under the circumstances." (citation and alterations omitted)).

Instead of following *Stoudemire*, the district court reached out-of-circuit to *Powell v. Barrett*, 541 F.3d 1298 (11th Cir. 2008) (en banc), which it believed stood for the proposition that "subjecting inmates to delousing in front of other detainees is justified and not a violation of individual rights." But *Powell* held no such thing, given its observation that "Plaintiffs do not challenge the *manner* of the strip searches." *Id.* at 1301. In fact, the same en banc court previously hewed to the commonplace observation that non-private strip searches are relatively more invasive than searches conducted in private. *See Evans*, 407 F.3d at 1281 (noting that "[l]ittle respect for privacy was observed" where the plaintiff was strip searched in view of others).

If plaintiffs are to be believed—and, at this point in the proceeding, they must be—they were ordered to crouch naked on the floor with several strangers in the room while corrections officers (and a fellow detainee, in Bealer's case) hosed off their intimate body parts. Plaintiffs' circumstances are far removed from those at issue in *Florence*, given that "[p]ublic exposure of the genitalia accompanied by physical touching is far more intrusive than directing an arrestee to remove her clothing in private for the purpose of 'visually inspecting' the arrestee's genitalia." *Amaechi*, 237 F.3d at 363. *See also Roberts v. State of R.I.*, 239 F.3d 107, 113 (1st Cir. 2001) (noting that a prison's strip search policy was reasonable where "the search is generally

conducted in private" and "is entirely visual").  The district court's cursory dismissal of plaintiffs' allegations that their delousing involved physical touching and that they were forced to disrobe in the presence of other detainees substantially underestimated the gravity of the intrusion into their privacy that the jail's conduct perpetrated.

2.

Given the significant incursion into plaintiffs' privacy rights caused by the jail's preferred method of searching and delousing them, the jail's need to perform the searches in this particular manner must be unusually dire before it can outbalance the affront to plaintiffs' privacy. *Florence*, 132 S. Ct. at 1516.  In this respect, again, the pertinent question is not whether the jail has a general need to prevent the introduction of lice into its facility (obviously, it does) but whether the jail's selection of the particular procedures to which it subjected plaintiffs is reasonably related to that legitimate end.  *Stoudemire*, 705 F.3d at 573.  At this juncture in the analysis, the procedural posture of this case is important.  To state a claim, plaintiffs were required only to plausibly allege—rather than demonstrate—that the jail acted unreasonably. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  And that is what plaintiffs' proposed filing did:  It plausibly alleged that, given the alternatives, it was unreasonable for the jail (1) to spray them with delousing solution instead of permitting them to self-apply it, and (2) to conduct the strip searches and delousing in groups of detainees (or with one detainee spraying another) instead of individually.

Despite the indisputable underlying interest in searching or seizing a detainee in furtherance of a legitimate penological objective (such as preventing the dissemination of lice), a correctional institution will have little need to conduct the search or seizure in a particular manner if there are "obvious, easy alternatives . . . that fully accommodate[] the prisoner's rights at *de minimis* cost" to the institution's valid penological interest underlying the search in the first place. *Turner*, 482 U.S. at 90–91.  Plaintiffs here have plausibly alleged the existence of such alternatives.  Instead of the "hose treatment," they suggest that Cleveland could permit detainees to self-apply delousing solution.  Plaintiffs assert that several other penological facilities permit the self-application of delousing solution in the manner that they request. *See, e.g., Florence*, 132 S. Ct. at 1514; *Russell v. Richards*, 384 F.3d 444, 446 (7th Cir. 2004).

Although Cleveland vociferates that such a practice would be impracticable, and although Cleveland's jail may be operating under constraints not applicable to other institutions that have implemented less invasive procedures, those factual disputes are appropriately resolved through discovery, not on the pleadings. *See, e.g.*, *Russell*, 384 F.3d at 448 (noting that the evidentiary record did not suggest "that significant numbers of inmates ignore the instruction to use the delousing shampoo, that they rinse the shampoo out of their hair too quickly to have any impact on head lice, or that they are much more likely to be infected with lice elsewhere on their body than they are on their heads"); *Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 2013 WL 5531855, at *13 (S.D. W. Va. Oct. 4, 2013) (resolving the issue on summary judgment); *Logory v. Cnty. of Susquehanna*, 277 F.R.D. 135, 142 (M.D. Pa. 2011) (same). In the absence of some evidence suggesting frequent noncompliance or an unreasonable drain on jail resources, it is not obvious that it would be impracticably onerous for the jail to permit self-application of the delousing solution while reserving the "hose treatment" for instances where individual detainees misapply or refuse to properly apply the provided solution.

And there is no question that permitting self-application of the delousing solution would be less humiliating and invasive than the "hose treatment." Not only would such a policy avoid officers' intentional physical touching of a detainee's intimate body parts, but it would also preserve a detainee's ability to exercise one of the most basic of human qualities: the faculty of choice. Giving a detainee the opportunity to self-apply the delousing agent permits her to weigh the alternatives and choose the option that enables her to comply with the delousing requirement while protecting her self-dignity. Simply spraying the detainee with a hose as if she was an object or an animal treats her as if she does not have the capacity to make that choice.

If the same principle was extended to other aspects of the jail's intake process, its dehumanizing effects would be obvious. The jail's mandatory shower requirement, for example, would be significantly more denigrating to detainees if they were pressure-washed by officers en masse instead of first being given an opportunity to shower themselves. The same could be said for the removal of detainees' clothes: Strip searches would be even more humiliating if, instead of giving detainees a chance to remove their own clothing, corrections officers simply did it for them. Absent a good reason for the jail to do so, its decision to adopt the far more invasive of

two equally available options would be a needless intrusion into the detainees' constitutional rights.

In short, plaintiffs have identified an alternative delousing regimen that is much less invasive than the "hose treatment" and have plausibly alleged that it could be readily implemented at the jail without compromising the jail's interest in preventing lice infestations. Because plaintiffs have plausibly alleged that the jail has little or no need to spray the detainees rather than to permit self-application of the delousing solution, their proposed filing states a constitutional claim. *See Iqbal*, 556 U.S. at 678.

The same analysis applies to the jail's decision to strip search and delouse plaintiffs in full view of other detainees or—in Bealer's case—to have one detainee spray delousing solution on another naked detainee. The obvious alternative is to have corrections officers (not other detainees) conduct the searches and seizures in private rather than in the presence of other detainees. *Stoudemire*, 705 F.3d at 573. Again, plaintiffs' proposed filing plausibly alleged that, given an easily implemented and significantly less-invasive alternative, the particular manner in which the jail conducted the strip searches and delousing was unreasonable. *Turner*, 482 U.S. at 91. The district court therefore erred in concluding that the proposed second amended complaint failed to adequately allege a constitutional violation and in deciding to disallow the amendment on that basis.

In the final analysis, of course, the jail may have had good reasons for conducting these procedures in the particular manner in which it did. *See, e.g.*, *Cantley*, 2013 WL 5531855, at *10. But that is a matter for resolution either at trial or on summary judgment, not on the pleadings. The district court, which opined that delousing naked inmates in a group "is justified," jumped the gun. Whether the particular manner in which the jail conducted the searches and seizures at issue here was "justified" depends on the facts, such as "whether any exigent circumstances compelled [the officers] to strip search [plaintiffs] in view of other inmates" or to disallow plaintiffs an opportunity to apply the delousing solution to themselves. *Stoudemire*, 705 F.3d at 573–74. In view of plaintiffs' plausible allegations of readily available and less-invasive alternatives, the district court cannot have opined that the jail's conduct was "justified" without examining the evidence—which, of course, it cannot do when determining

merely whether the proposed complaint failed to state a claim. We decline Cleveland's invitation to make the same mistake.[1]

### III.

Because the basis for the district court's denial for leave to amend the pleadings was erroneous, its decision to enter judgment on those pleadings was likewise erroneous. We therefore reverse the judgment of the district court and remand for further proceedings. On remand, plaintiffs shall be granted leave to file the proposed second amended complaint.

---

[1]Plaintiffs appear to have abandoned any argument with respect to the second cause of action noted in their proposed second amended complaint, which alleges that the jail's delousing procedure is unconstitutional because it does not actually prevent lice. *Cf. Florence*, 132 S. Ct. at 1518 (noting the undoubted interest in eradicating lice and approving use of delousing solution); *Russell*, 384 F.3d at 448 (upholding an institution's use of delousing solution despite evidence that it was only imperfectly useful at killing lice because "the fit between the jail's legitimate interests and its policy need not be perfect in order to survive scrutiny, it need only be rational").