NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0131n.06
Case No. 15-1598

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| AMIRA SALEM; KESHUNA ABCUMBY, | ) | **FILED** |
|  | ) | Mar 09, 2016 |
| Plaintiffs-Appellees, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) |  |
|  | ) | ON APPEAL FROM THE UNITED |
| MICHIGAN DEPARTMENT OF | ) | STATES DISTRICT COURT FOR |
| CORRECTIONS; DANIEL H. HEYNS, | ) | THE EASTERN DISTRICT OF |
| Director at MDOC; THOMAS G. FINCO, | ) | MICHIGAN |
| Deputy Director MDOC; DENNIS STRAUB, | ) |  |
| Former Deputy Director; RANDY | ) |  |
| TREACHER, Chief Deputy MDOC; | ) |  |
| MILLICENT WARREN, Warden, | ) |  |
|  | ) |  |
| Defendants-Appellants. | ) |  |

BEFORE: SILER, COOK, and KETHLEDGE, Circuit Judges.

COOK, Circuit Judge. Plaintiffs Amira Salem and Keshuna Abcumby filed a class-action complaint under 42 U.S.C. § 1983 challenging Women's Huron Valley Correctional Facility's (WHV) strip-search policy. Defendants now collaterally appeal a district court order denying qualified immunity to WHV's warden and finding that Plaintiffs' claim for injunctive relief was not moot. We AFFIRM the district court's denial of qualified immunity to the warden and DISMISS, for lack of jurisdiction, the appeal of the injunctive-relief claim.

## I.  Background

Since 2009, WHV policy requires an inmate returning from an off-site trip or contact visit first to "bend and spread her buttocks" and then to "sit on a sanitary paper lined chair and spread her knees so as to spread the lips of her vagina to allow inspection."

Prior to 2009, WHV consisted of two facilities: East and West.  While both sides subjected inmates to the bend-and-spread strip searches, only the East side used the chair portion. After the facilities consolidated in 2009, Millicent Warren became warden for the entire unit and universally implemented the chair portion of the strip search.  She says the decision rested on the need to comply with a 1998 Michigan Department of Corrections (MDOC) training video depicting a proper strip search and on the rationale that such a procedure would "aid staff in performing a more thorough search for contraband."

During 2010 and 2011, many prisoners grieved the "face to face" aspect of the search and the requirement that they spread their labia for inspection.  Slightly less than half of those grievances also highlighted sanitation concerns, namely that prison officials sometimes failed to provide chair covers or disinfectant.

In response, Warren initiated an administrative fact finding and review process questioning the necessity of the chair-based searches—which ultimately led her to conclude that "[o]n balance the increased security benefit provided by the use of the chair portion of the strip search, on the present data may not be sufficiently great to require, even though it allows, the modest stressor of [its] continued use."  She therefore notified staff that the chair portion was "no longer authorized" as of December 16, 2011.  The written policy—though still allowing routine bend-and-spread searches—now requires reasonable suspicion to conduct a vaginal search.

Nearly two years later, Plaintiffs sued Defendants on behalf of all female prisoners who, since October 2010, endured the chair-based strip search. These searches, they claimed, violated their Fourth, Eighth, and Fourteenth Amendment rights, and they requested monetary damages along with prospective injunctive relief. Plaintiffs alleged that prison staff performed the searches on an unsanitary chair and "in full view of one another."[1] According to them, the chair-based searches continue at WHV notwithstanding Warren's December 2011 directive.

Defendants moved for summary judgment, asserting Eleventh Amendment sovereign immunity for Plaintiffs' monetary-damages claims against the MDOC—the state entity encompassing WHV—and the individual defendants in their official capacities. As for the individual-capacity claims, Defendants invoked qualified immunity, arguing that the strip searches violated no clearly established constitutional rights. Finally, Defendants moved for summary judgment on Plaintiffs' injunctive-relief claim on mootness grounds, arguing that WHV officially discontinued the routine use of the chair-based strip search.

The district court agreed that the Eleventh Amendment barred Plaintiffs' monetary claims against the MDOC and the named defendants in their official capacities. It also found Plaintiffs' Fourteenth Amendment claim abandoned and their Eighth Amendment claim insufficiently established. The court then dismissed the Fourth Amendment, unreasonable-search claim against all the defendants except Warren because Plaintiffs "failed to differentiate [their] individual conduct." Finding adequate the individual-conduct allegations against Warren, the court then denied Warren qualified immunity, holding that "Plaintiffs have identified a . . . well established right to be free from a strip search that was performed in full view of other

---

[1] Plaintiffs also alleged in their response to Defendants' motion to dismiss that prison officials searched them in full view of male officers and made derogatory remarks throughout. But neither the complaint nor Plaintiffs' submitted affidavits include these allegations. The district court therefore refused to consider them, and we follow suit.

prisoners." Finally, the court denied summary judgment on the claim for prospective injunctive relief, finding that the allegedly ongoing nature of the searches overcame Defendants' mootness argument. Defendants now collaterally appeal the district court order.

## II. Unreasonable-Search Claim Against Warren

We have jurisdiction to review the district court's denial of qualified immunity to Warren on the Fourth Amendment, unreasonable-search claim under the collateral-order doctrine. Because Warren disputes none of Plaintiffs' alleged facts and argues that the search policy she formulated meets constitutional standards, her appeal raises a pure question of law. *See Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999).

"[W]e review the district court's denial of qualified immunity de novo under the usual summary judgment standard." *Armstrong v. City of Melvindale*, 432 F.3d 695, 698–99 (6th Cir. 2006). To defeat a claim of qualified immunity, a plaintiff must show: (1) that the defendant violated a constitutional right, and (2) that right was clearly established at the time of the defendant's actions. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Plaintiffs offer two arguments supporting their unreasonable-search claim: (1) the lack of individualized suspicion, and (2) the manner in which the prison conducted the strip searches. Plaintiffs' first argument fails under Sixth Circuit and Supreme Court precedent. *See Florence v. Bd. Of Chosen Freeholders*, 132 S. Ct. 1510, 1518–20 (2012) (rejecting the argument that prison officials need reasonable suspicion to conduct visual body-cavity searches); *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 575 (6th Cir. 2013) ("[S]uspicionless strip searches [are] permissible as a matter of constitutional law . . . .").

The manner argument, however, requires closer attention, as Plaintiffs complain that they were forced to sit on a chair and spread their labia in unsanitary conditions and in full view of other prisoners. *See Williams v. City of Cleveland*, 771 F.3d 945, 952 (6th Cir. 2014) (explaining that a strip search policy "may be unreasonable by virtue of the way in which it is conducted" (citing *Stoudemire*, 705 F.3d at 574)).

Invoking qualified immunity, Warren argues that Plaintiffs offered no facts supporting her personal involvement in any searches done in public view, and she points to MDOC policy forbidding guards from searching in such a manner. But Warren neglected to raise this argument in her motion for summary judgment thus failing to preserve it for review in this interlocutory appeal. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553–54 (6th Cir. 2008). We confine our inquiry to whether the searches, performed in the manner alleged by Plaintiffs, violated their clearly established Fourth Amendment rights.

Whether a prison search is constitutionally reasonable depends on "whether the jail's 'need for the particular search' outweighs 'the invasion of personal rights that the search entails.'" *Williams*, 771 F.3d at 950 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979); *Stoudemire*, 705 F.3d at 572). In making this determination, we "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted," *id.* (quoting *Bell*, 441 U.S. at 559), while also examining "obvious, easy alternatives" that accommodate the inmate's privacy interests at little cost to valid penological objectives, *id.* (quoting *Turner v. Safley*, 482 U.S. 78, 90–91 (1987)).

Applying this test, this court has held that strip searches performed in view of other inmates without a legitimate penological justification violates inmates' clearly established Fourth Amendment rights. *Williams*, 771 F.3d at 952–56; *Stoudemire*, 705 F.3d at 572–75. Warren

attempts to sidestep *Williams* and *Stoudemire* by focusing on aggravating circumstances in those cases—in addition to the public nature of the searches—that are not present here. For example, *Williams* involved guards spraying a delousing agent directly on a prisoner's genitals. 771 F.3d at 948. And the plaintiff in *Stoudemire* alleged that the prison guard smirked during an ad hoc search. 705 F.3d at 573–74. But those facts fail to undercut this court's stance that searches conducted in view of other inmates—who "do not share the searching officers' institutional need to view [another prisoner] unclothed"—are exceedingly intrusive. *Williams*, 771 F.3d at 953. Moreover, Plaintiffs pair their public-viewing allegations with claims that guards forced the inmates to "sit naked on an unwashed and unsanitized chair wet with bodily fluids from other prisoners." These aspects of the searches amplify their invasiveness.

Regarding the justification for the searches, Warren points to the prison's need to "detect[] and deter[] the possession of contraband." (Appellant Br. at 25 (quoting *Stoudemire*, 705 F.3d at 573).) While we recognize the importance of those goals, *see Bell*, 441 U.S. at 546–48; *Florence*, 132 S. Ct. at 1519–20, they can be met through constitutionally competent searches outside the view of other inmates, *see Stoudemire*, 705 F.3d at 574 ("[A]lthough [the guard] had a valid reason for searching [plaintiff], no special circumstances provided additional justifications for strip searching [her] where others could see her naked."). Indeed, the obvious, less invasive alternative is to "conduct the searches and seizures in private rather than in the presence of other [prisoners]." *Williams*, 771 F.3d at 955 (citing *Stoudemire*, 705 F.3d at 573). Warren makes no argument that this alternative would undermine penological objectives. Thus, viewing the facts in the light most favorable to Plaintiffs, we uphold the judgment of the district court denying qualified immunity to Warren regarding the non-private searches.

Warren also presses that because *Stoudemire* and *Williams* post-date the complained-of chair searches, no clearly established right existed at the time of the alleged violations and thus qualified immunity shields her from Plaintiffs' unreasonable-search claim. We held in *Stoudemire*, however, that "the right not to be subjected to a humiliating strip search in full view of several (or perhaps many) others" was clearly established by February 2007—two years before Warren implemented the chair searches at issue. 705 F.3d at 575 (quoting *Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002)).

## III.    Injunctive-Relief Claim

Defendants also appeal the district court's decision allowing Plaintiffs' claim for injunctive relief to proceed. Though the collateral-order doctrine permits an interlocutory appeal of "a district court order denying a claim of Eleventh Amendment immunity," *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993), the Defendants never invoked sovereign immunity as to this claim. Instead, they relied on the Prison Litigation Reform Act in pressing for summary judgment on mootness grounds. Defendants maintain on appeal that sovereign immunity bars Plaintiffs' injunctive-relief claim under *Papasan v. Allain*, 478 U.S. 265 (1986), but the district court had no opportunity to pass on this argument. Thus, no "district court order denying a claim of Eleventh Amendment immunity" exists for Defendants to collaterally appeal. *P.R. Aqueduct*, 506 U.S. at 147. Accordingly, we lack jurisdiction to consider the injunctive-relief claim. *See Mingus v. Butler*, 591 F.3d 474, 484 (6th Cir. 2010).

## IV.    Conclusion

For the above reasons, we AFFIRM the district court's denial of qualified immunity to Warren and DISMISS Defendants' appeal as to Plaintiffs' injunctive-relief claim.