Atcheson, J., concurring:
As outlined in Judge Hill's opinion, the good-faith exception to the exclusionary rule may be properly applied here and requires affirming the Ellis County District Court's denial of the motion Defendant Dustin Dean Perkins filed to suppress the results of the breath test administered to him after he was arrested for driving under the influence. That law entails settled principles governing the protections against unreasonable government searches and seizures in the Fourth Amendment to the United States Constitution. And it fully resolves the only disputed issue before us on appeal. I concur in that aspect of the majority opinion.
But we have no need to embark upon a mostly uncharted journey starting at the intersection of the search-incident-to-an-arrest exception to the Fourth Amendment's warrant requirement with the use of breathalyzers to measure blood-alcohol levels. The application of that exception to breath tests entails a new wrinkle in Fourth Amendment law recognized, though hardly resolved, in Birchfield v. North Dakota , 579 U.S. ----, 136 S.Ct. 2160, 2183-84, 195 L.Ed.2d 560 (2016). We should leave the exploration for other cases where it offers the only pathway forward.
Good-Faith Exception
In light of the stipulated facts furnished the district court to resolve Perkins' motion to suppress, the appellate record affords us a sufficient basis to consider the good-faith exception for the first time. As Judge Hill explains, the arresting officer acted in conformity with Kansas law when he informed Perkins of the criminal penalties that would attach if he revoked his implied consent to a breath test and otherwise refused to comply with the testing. The Kansas Supreme Court has since held K.S.A. 2012 Supp. 8-1025, *384 upon which the officer relied, to be unconstitutional, thereby rendering Perkins' consent *469 invalid. See State v. Ryce , 306 Kan. 682, 700, 396 P.3d 711 (2017). When a law enforcement officer reasonably conducts a search in reliance on a statute later held unconstitutional, federal and Kansas appellate courts have consistently recognized that the exclusionary rule, which bars evidence obtained in searches violating the Fourth Amendment, should yield to the good-faith exception. See Illinois v. Krull , 480 U.S. 340, 349-50, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) ; State v. Daniel , 291 Kan. 490, Syl. ¶ 7, 242 P.3d 1186 (2010). That's because the purpose of the exclusionary rule is to deter law enforcement officers from knowingly violating the Fourth Amendment-a purpose ill-served when an officer conducts a search in good-faith reliance on and in conformity with a statute or a judicially issued warrant.
Perkins has argued the good-faith exception shouldn't apply in this case because K.S.A. 2012 Supp. 8-1025 deals with consent and implied consent rather than the administration of the breath test itself and is, therefore, legally cleaved from any search. The argument, however, depends upon a distinction between the legal basis for a warrantless search, here consent, and the actual search itself. The distinction is so artificial and abstract as to be of no genuine significance in considering the interplay of the exclusionary rule and the good-faith exception. See Arizona v. Evans , 514 U.S. 1, 15-16, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (good-faith exception applies when law enforcement officer conducts search immediately after arresting subject on warrant that court personnel erroneously failed to show had been withdrawn).
The good-faith exception reflects settled constitutional law and fully resolves the issue presented to us. We should stop there. As a matter of jurisprudence, we ought to refrain from addressing whether search incident to an arrest, as an exception to the warrant requirement of the Fourth Amendment, also supports the district court's ruling. Courts should decline to reach constitutional issues unless absolutely necessary. See Lyng v. Northwest Indian Cemetery Prot. Assn. , 485 U.S. 439, 445-46, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) ; State ex rel. Schmidt v. City of Wichita , 303 Kan. 650, 658, 367 P.3d 282 (2016). Here, the State has presented *385 alternative constitutional arguments for affirming the district court. Since the good-faith exception alone satisfactorily undergirds the district court, we need not and should not weigh in on the other constitutional argument.
Search Incident to an Arrest
Because the majority engages the State's argument based on search incident to an arrest, I outline my trepidation with affirming on that ground. In Birchfield , the Court recognized that a breathalyzer test for alcohol may be conducted without a warrant as a search incident to an arrest. 136 S.Ct. at 2183. This represents a new and largely unexplored development in Fourth Amendment law. The Birchfield decision offers little guidance about how the development should be translated into practical application. In deciding Perkins' fate here, the majority doesn't offer any detailed discussion on that point, and its brevity fosters some troubling implications. See State v. Perkins , 55 Kan. App. 2d ----, Syl. ¶ 5, (No. 112449, this day decided).
The majority points out that search-incident-to-an-arrest is a categorical exception to the warrant requirement of the Fourth Amendment. That simply means any valid arrest excuses government agents from obtaining a judicial warrant to search the individual arrested and the area in his or her immediate vicinity. The exception applies without regard to the particular circumstances, such as the crime for which the arrest is made or the apparent dangerousness (or lack of dangerousness) of the suspect. A categorical rule governing an application of the Fourth Amendment is uncommon; typically, the totality of the circumstances informs the constitutionality of a search or seizure. See Skinner v. Railway Labor Executives' Assn. , 489 U.S. 602, 619, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) ("What is reasonable, of course, 'depends on all of the circumstances surrounding the search or seizure and the nature of the search and seizure itself.' ") (quoting United States v. Montoya de Hernandez , 473 U.S. 531, 537, 105 S.Ct. 3304, 87 L.Ed.2d 381 [ (1985) ] );
*470 State v. Wilson , No. 115,554, 2017 WL 3444509, at *3 (Kan. App. 2017) ("A totality-of-the-circumstances analysis is frequently used to determine the constitutional reasonableness of government action under the Fourth Amendment.").
*386 A search or seizure lawful at its inception may violate the Fourth Amendment if the government agents act unreasonably in the way they carry it out. See Tennessee v. Garner , 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ("[R]easonableness depends on not only when a seizure is made, but also how it is carried out."); Williams v. City of Cleveland , 771 F.3d 945, 950-51 (6th Cir. 2014) (manner in which pretrial detainees searched when booked into jail may be unconstitutionally unreasonable, even though some form of warrantless search permitted); United States v. Edwards , 666 F.3d 877, 883-84 (4th Cir. 2011) (evidence obtained during search incident to arrest suppressed because law enforcement officers' means of searching suspect violated reasonableness requirement of Fourth Amendment). The reasonableness of the means used to search a suspect following an arrest is not governed by a categorical rule. So, in short, not everything goes in searching a person after he or she has been arrested. The constitutionality of the means depends upon the typical totality-of-the-circumstances assessment. Garner , 471 U.S. at 8-9, 105 S.Ct. 1694 ; Williams , 771 F.3d at 950. Courts recognize that government agents may use some degree of restraint or force to search a noncompliant arrestee. See Graham v. Connor , 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ; Merricks v. Adkisson , 785 F.3d 553, 560-61 (11th Cir. 2015) ; Gross v. Pirtle , 245 F.3d 1151, 1158 (10th Cir. 2001).
As searches go, a breathalyzer test has some unusual attributes. Often, the evidence-a sample of the subject's breath-supports a misdemeanor charge of driving under the influence, as was true here, rather than a felony. The ultimate information sought actually is the subject's blood-alcohol level. And that information can be readily obtained in another entirely reliable way through a blood draw taken with (or in exigent circumstances without) a search warrant. A breathalyzer test cannot really be conducted without the subject's physical cooperation in deeply exhaling into the machine-unlike, for example, a search of an arrestee's clothing for weapons or contraband.
In light of those attributes, I fail to appreciate how the search-incident-to-an-arrest exception to the warrant requirement provides an alternative legal ground to uphold the district court's *387 denial of Perkins' motion to suppress. To be sure, Perkins had no constitutional right or other legal basis to refuse to provide a breath sample for testing. Given the nature of a breathalyzer test, he did, however, have the physical capacity to stymie the search simply by refusing to do so. We know that Perkins' consent was unlawful and, therefore, void. What we don't know from the factual record-and can't ever know-is what Perkins would have done had he been properly informed of the consequences of refusing to complete the breathalyzer test. He might very well have agreed to the test. But he might just as well have refused to cooperate. That's speculation, and because the State bears the burden of proof on a motion to suppress, speculation isn't good enough to carry the day. State v. Cleverly , 305 Kan. 598, 605, 385 P.3d 512 (2016) (burden of proof).
Because Perkins had no legal right to refuse the testing, consent is actually irrelevant. What matters is Perkins' physical compliance or cooperation with the testing. The majority may be saying that the legally false and, thus, otherwise impermissibly coercive statements the officer made to Perkins are constitutionally unobjectionable to obtain his physical cooperation in the breathalyzer test. In other words, the majority could be relying on the notion government agents may use trickery or deception to carry out a search that does not require a judicial warrant. That's a Fourth Amendment wrinkle left unexplored in the majority opinion. And the wrinkle is sufficiently troubling that I would defer the entire issue for a case requiring full consideration of the potential ramifications.
If trickery or deceit may be deployed to effect a breathalyzer test, are there limits to the false representations government agents may make? Could the arresting officer here *471 have drawn his service weapon and threatened to shoot Perkins if he didn't provide a breath sample? What about a somewhat more plausible threat to use a Taser? The officer presumably would not have resorted to either, so they would be tricks. But a threat to inflict bodily injury or pain would seem to be unreasonable under the circumstances, especially given the crime, the evidence sought, and other readily available means of obtaining that evidence. Moreover, given the totality of the circumstances, the actual use of physical force to compel an arrestee to provide a breath sample *388 presumably would cross the line of unreasonableness set in the Fourth Amendment.[*]
[*]Typically, an officer could obtain a search warrant for a blood draw as an alternative to a breathalyzer test. An arrestee could attempt to physically resist a blood draw. In that situation, one or more officers might be required to restrain the arrestee so a medical technician could take a blood sample. The constitutionally permissible restraint would be measured and relatively brief. But physical restraint alone would be insufficient to obtain a breath sample for a breathalyzer test. The physical force applied to the arrestee would be designed to compel him or her to cooperate by providing an adequate breath sample. In other words, the government agents' use of force would be aimed at physically coercing affirmative conduct from the arrestee rather than briefly inhibiting the arrestee's active resistance. The former more nearly partakes of impermissible infliction of pain or torture, and the latter of acceptable restraint.
I am unpersuaded that a search incident to an arrest, as an exception to the warrant requirement of the Fourth Amendment, provides an alternative rationale for the result in this case. In addition, it opens up how law enforcement officers might use the exception, either constitutionally or unconstitutionally, in attempting to administer breathalyzer tests in future cases. The exercise is fraught with the risk of implicitly promoting untoward government action and Fourth Amendment violations. We should confine ourselves to ruling based on the good-faith exception to the exclusionary rule and affirm the district court's denial of the suppression motion for that reason alone.