NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0471n.06

Case No. 22-5219

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED
Nov 22, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| TIMOTHY JOSEPH MCILWAIN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| ALLEN P. DODD, III; ELIZABETH DODD; | ) | |
| ALLEN M. DODD, | ) | |
| | ) | |
| Defendants-Appellees. | ) | O P I N I O N |
| | ) | |

Before: SUTTON, Chief Judge; COLE and GRIFFIN, Circuit Judges.

COLE, Circuit Judge. Timothy McIlwain and Brooke Berry are the parents of minor child H.D.M. In March 2019, McIlwain and Berry began custody proceedings in Kentucky state court, during which Berry retained Elizabeth Dodd as her attorney. In June 2021, McIlwain filed suit against Elizabeth Dodd, Allen P. Dodd, III, and Allen M. Dodd alleging, inter alia, conspiracy to deprive McIlwain of his rights under 42 U.S.C. § 1985(3), malicious prosecution, and negligent infliction of emotional distress. The Dodds moved to dismiss the complaint, McIlwain responded, and the Dodds replied. McIlwain then moved to amend his complaint, realleging the conspiracy and malicious prosecution claims and converting the negligent infliction of emotional distress claim into an intentional infliction of emotional distress claim. The district court determined that the motion to amend would be futile. Accordingly, the district court denied McIlwain's motion to

amend and granted the Dodds' motion to dismiss. Because we agree that McIlwain failed to allege facts sufficient to support his claims, we AFFIRM.

## I. BACKGROUND

### A. Facts

Timothy McIlwain and Brooke Berry are parents to minor child H.D.M. McIlwain and Berry raised H.D.M together until February 2019 when both parties filed for custody in Kentucky. In March 2019, the Kentucky court granted McIlwain and Berry joint legal custody. McIlwain alleges that between February and April 2019, Berry prevented McIlwain from seeing his daughter during prescribed visitation periods. In April 2019, McIlwain filed a motion to make up the lost visitation time. Around the same time, Berry retained Elizabeth Dodd ("Elizabeth") to represent her in the custody proceedings. McIlwain alleges that the Dodds "undoubtedly counseled" Berry to engage in a parent alienation protocol to prevent H.D.M from seeing her father. In May 2019, Elizabeth filed a response to McIlwain's outstanding motion to make up the visitation time and filed a motion for a protective order, also referred to as a domestic violence order ("DVO"). McIlwain alleges that the motion for the protective order was filed based on false information from Berry. In May 2019, the Kentucky court entered the DVO, preventing McIlwain from coming within 500 feet of Berry.

After the DVO was entered, McIlwain maintains that Elizabeth created situations meant to force McIlwain into violating the DVO. For example, McIlwain alleges that Elizabeth arranged for Berry to arrive an hour early to pick up H.D.M from school so that Berry and McIlwain would cross paths.

On August 6, 2019, Berry was deposed at the office of Doug Haynes, McIlwain's family law attorney. A judicial order prohibited McIlwain from being present at this deposition.

Allegedly advised by his attorney to get a transcript of the court's rulings, McIlwain went to the courthouse that afternoon. McIlwain states that the deposition ended at 3:00 PM, and he arrived at the courthouse at 4:20 PM to avoid contact with Elizabeth and Berry. McIlwain avers that Berry and Elizabeth went to the courthouse following the deposition and waited there for McIlwain. Once McIlwain had arrived, Elizabeth "ran" to get the sheriff and made allegedly false statements that McIlwain violated the DVO and followed them to the courthouse. The sheriff arrested McIlwain, who then spent the night in jail before being released.

McIlwain alleges that prosecutors reviewed courthouse video showing that Elizabeth and Berry were "lying in wait." (Proposed Am. Compl., R. 24-2, PageID 292.) Ultimately, the charges against McIlwain were dropped following his stipulation to probable cause for the arrest. McIlwain maintains that this stipulation was limited and did not extend to Elizabeth.

Later in August 2019, McIlwain's time in jail following his arrest at the courthouse was used as one reason for a complaint filed against him with Kentucky Child Protective Service. According to McIlwain's proposed amended complaint, Child Protective Service found none of the allegations against him to be true or worthy of action.

In September 2019, the Kentucky court overseeing the custody suit denied McIlwain's motions for a hearing and immediate visitation, allegedly due to Elizabeth's misrepresentations to the judge's secretary regarding McIlwain's statements. In January 2020, McIlwain agreed to new, "unfavorable" visitation terms to reestablish contact with his daughter.

Finally, McIlwain alleges that Elizabeth and Berry made sexually explicit videos with H.D.M to gain an advantage in the custody dispute, accused McIlwain of sexually abusing his daughter, and enlisted H.D.M.'s pediatrician to make false claims about H.D.M.'s health that would prevent McIlwain from seeing his daughter. In his original complaint, McIlwain also

alleged that in October or November 2019, Elizabeth and Berry sent his daughter to a "handpicked New York therapist to get evidence to block the child from the father permanently." (Compl., R. 1, PageID 31.)

## B. Procedural History

On June 22, 2021, McIlwain filed a complaint against Elizabeth Dodd, Allen P. Dodd, and Allen McKee Dodd ("Dodds") alleging conspiracy to violate his rights under 42 U.S.C. § 1985(3), false imprisonment, malicious prosecution, abuse of process, fraud-deceit, negligent misrepresentation, negligent infliction of emotional distress, and negligent supervision and training. The Dodds moved to dismiss all counts pursuant to Federal Rule of Civil Procedure 12(b)(6). McIlwain filed a response which addressed the arguments concerning the malicious prosecution, negligent infliction of emotional distress, and § 1985(3) conspiracy claims. The Dodds replied. On December 12, 2021, McIlwain moved to amend his complaint. His new complaint realleged claims of conspiracy under 42 U.S.C. § 1985(3), false imprisonment, malicious prosecution, abuse of process, and fraud-deceit, made no mention of the negligent misrepresentation or negligent supervision and training claims, converted the negligent infliction of emotional distress into an intentional infliction of emotional distress claim, and added additional claims against new defendants Brooke Berry, Leah Berry, and John Doe Sheriffs.

The district court denied the motion to amend, finding that the claims against the new defendants failed because of lack of notice and failure to file the motion to amend within 120 days of the original complaint. *See* Fed. R. Civ. P. 15(c). The district court also determined that the claims in the proposed amended complaint were futile because these claims would not survive a motion to dismiss. Accordingly, the district court denied McIlwain's motion to amend the complaint and granted the Dodds' motion to dismiss. McIlwain appeals.

## II. ANALYSIS

On appeal, we address only the claims alleging conspiracy under 42 U.S.C. § 1985(3), malicious prosecution, and intentional infliction of emotional distress. The district court properly dismissed as abandoned the remaining negligence claims that were neither addressed in McIlwain's response to the motion to dismiss nor mentioned in the proposed amended complaint. *See Bazinski v. JPMorgan Chase Bank, Nat'l Ass'n.*, 597 F. App'x 379, 380–81 (6th Cir. 2015) (per curiam). Additionally, on appeal McIlwain addresses neither the lower court's dismissal of his abuse of process, fraud-deceit, and false imprisonment claims nor the denial of the motion to amend to add new claims against new defendants. We consider those claims abandoned. *Doe v. Michigan State Univ.*, 989 F.3d 418, 425 (6th Cir. 2021).

We review de novo dismissals pursuant to Rule 12(b)(6). *In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010). "In reviewing a motion to dismiss, we must accept non-conclusory allegations of fact in the complaint as true and determine if the plaintiff has stated a plausible claim for relief." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846 (6th Cir. 2012). But, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

We also review de novo the denial of a motion to amend based on futility. *Doe*, 989 F.3d at 426. Denying a motion to amend because it is futile is a determination that the claims in the proposed amended complaint would not survive a motion to dismiss. *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014). Therefore, the pertinent question on appeal is whether the amended complaint alleges sufficient facts to state a plausible claim for relief. *Id.*

### A. Conspiracy Pursuant to 42 U.S.C. § 1985(3)

#### 1. Statute of Limitations

In Kentucky, the statute of limitations for a conspiracy claim brought under 42 U.S.C § 1985(3) is one year. Because § 1985(3) does not provide a statute of limitations, this court looks to the law of the state where the cause of action arose to provide the applicable limitations period. *Burnett v. Grattan*, 468 U.S. 42, 49 (1984). We previously determined that claims brought under § 1985(3) fall within the one-year limitations period defined in Kentucky Revised Statutes § 413.140(1). *Bowden v. City of Franklin*, 13 F. App'x 266, 272 (6th Cir. 2001) (per curiam). The *Bowden* court determined "that Section 413.140 'is the most analogous to § 1985(3) in that it is directed at conspiracies.'" *Id.* (quoting *Bedford v. Univ. of Louisville Sch. of Med.*, No. 88-6423, 1989 WL 123143, at *3 (6th Cir. Oct. 19, 1989) (table op.)). Therefore, a claim for relief under § 1985 must be brought within one year of the date of accrual.

McIlwain's argument that the five-year limitations period from Kentucky Revised Statutes §§ 413.120(2), (6) should apply is unavailing. McIlwain supports this argument only by advancing his own interpretation of sections 413.120(2) and (6). He fails to direct the court to—and the court has been unable to find—any case law supporting his view.

We are also unpersuaded by McIlwain's arguments that the district court erred in its determination of the accrual date for the claim under § 1985(3). Though state law determines the limitations period, federal law determines when a cause of action accrues. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). A cause of action under a civil rights statute accrues "when the plaintiff knows or has reason to know of the injury that is the basis of his action." *Id.* at 273. Under the "last overt act" doctrine, a claim accrues on the date of the last overt act by the defendants that caused injury to the plaintiff. *See, e.g.*, *United States ex rel. Griffith v. Conn*,

117 F. Supp. 3d 961, 987 (E.D. Ky. 2015) (discussing Sixth Circuit precedent regarding application of the last overt act doctrine to civil conspiracies).

Here, McIlwain alleges that the Dodds and Berry undertook a series of actions aimed at depriving him of his fundamental right to parent. Reviewing both the amended complaint and the original complaint, the last act undertaken by Elizabeth that caused injury to McIlwain occurred either in August or September 2019 when Dodd allegedly made misrepresentations to the family court judge, or in October or November 2019, when H.D.M, was sent to a "handpicked New York therapist to get evidence to block the child from the father permanently." (Compl., R. 1, PageID 31.) The original complaint was filed in June 2021, more than a year after either of these events. Dismissal of the charge alleging violation of the DVO cannot be a basis for accrual because dismissal of this charge against McIlwain was neither an act undertaken by the Dodds, nor did it cause injury to McIlwain. Therefore, his claim under § 1985(3) was untimely.

*2. Merits*

Independent of the statute of limitations, the district court properly dismissed McIlwain's claim under § 1985(3) because McIlwain failed to establish both that he is a member of a protected class and that the Dodds' actions were motivated by class-based animus.

To plead a claim under § 1985(3), a plaintiff must show

> (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. Plaintiff must also establish that the conspiracy was motivated by a class-based animus.

*Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994) (citations omitted).

Both the Supreme Court and this court have reiterated that class-based animus is an element of a § 1985(3) conspiracy claim. *See, e.g.*, *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("[T]here must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."); *United Brotherhood of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 835–38 (1983) (reaffirming *Griffin*'s interpretation of § 1985(3)); *Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022) ("We have held that § 1985(3) reaches only conspiracies targeting a person based on a classification (like racial discrimination) that would receive heightened scrutiny under the Supreme Court's equal-protection framework."). Given this consistent precedent, McIlwain's argument that it is unnecessary to prove class membership to succeed on a claim brought under § 1985(3) fails.

McIlwain insufficiently pleaded both membership in a protected class and that the conspiracy was undertaken because of discriminatory animus. First, McIlwain argues that he is part of the protected class of "single fathers." There is no case law supporting the notion that single fathers constitute a protected class for purposes of a claim under § 1985(3). Indeed, several district courts have considered the issue and found the opposite. *See Nielson v. Legacy Health Sys.*, 230 F. Supp. 2d 1206, 1211 (D. Or. 2001) (declining to find that a single father is a member of a protected class for the purposes of a claim under § 1985(3)); *Humphrey v. Court of Common Pleas*, 640 F. Supp. 1239, 1243 (M.D. Pa. 1986) (same); *Darian v. Cashe*, No. 17-52, 2017 WL 3326976, at *7 (M.D. La. July 17, 2017) (same); *Walsh v. Krantz*, No. 1:07-CV-0616, 2008 WL 2329130, at *4–5 (M.D. Pa. June 4, 2008) (same); *see also Borlawsky v. Town of Windham*, 115 F. Supp. 2d 27, 29 (D. Me. 2000) (finding single mothers do not constitute a protected class in the § 1985(3) context).

None of the cases cited by McIlwain to support his argument establish that single parents of either gender are a protected class for the purposes of a claim under § 1985(3). Rather, these cases establish a fundamental right to parent for the purposes of procedural and substantive due process. *See Stanley v. Illinois*, 405 U.S. 645 (1972); *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Troxel v. Granville*, 530 U.S. 57 (2000) (plurality opinion). *Stanley v. Illinois* held that a single father's parental rights cannot be terminated without a hearing to determine parental fitness. 405 U.S. at 649. *Meyer v. Nebraska* confirmed that parents have the right to direct the education of their children. 262 U.S. at 400. *Troxel v. Granville* considered an as-applied challenge to a Washington state statute that a plurality of the Supreme Court determined violated a mother's right to direct the upbringing of her children. 530 U.S. at 74–75. In other words, none of these cases establish that single fathers are a protected class for the purpose of a claim under § 1985(3).

Even if McIlwain had established that single fathers constitute a protected class, he has failed to allege facts that show the conspiracy was undertaken *because* he is a single father. Nothing in the record indicates that the Dodds acted out of animus towards single fathers as a group nor that they treated McIlwain differently because of his status as a single father. *See Hills & Dales Gen. Hosp.*, 40 F.3d at 839.

McIlwain fails to plead facts sufficient to support a claim under § 1985(3). Even if he had, the claim was untimely. We affirm the district court's dismissal of this claim.

## B. State Law Claims

McIlwain also alleges several state law claims. As a preliminary matter, McIlwain asserts that this court has jurisdiction to hear the state law claims under 28 U.S.C. § 1332 because he and the Dodds are citizens of different states. But, the amended complaint includes facts that suggest

McIlwain, like the Dodds, is a citizen of Kentucky. If McIlwain is a citizen of Kentucky, this would defeat diversity jurisdiction. *See* 28 U.S.C. § 1332.

But, regardless of McIlwain's state citizenship, this court can exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) because McIlwain's state law claims and federal claim originate from a common nucleus of operative fact. *See Kubala v. Smith*, 984 F.3d 1132, 1137–38 (6th Cir. 2021). The allegations underlying the malicious prosecution claim and the intentional infliction of emotional distress claim, discussed below, are part of the alleged conspiracy to violate McIlwain's civil rights under § 1985(3), and so, supplemental jurisdiction is appropriate.

*1. Malicious Prosecution*

McIlwain filed a malicious prosecution claim against Elizabeth for her actions in bringing about his arrest for the alleged violation of the DVO. To prevail on a malicious prosecution claim in Kentucky, a plaintiff must prove that:

> 1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff; 2) the defendant acted without probable cause; 3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based; 4) the proceeding . . . terminated in favor of the person against whom it was brought; and 5) the plaintiff suffered damages as a result of the proceeding.

*Martin v. O'Daniel*, 507 S.W.3d 1, 11–12 (Ky. 2016).

Factor two—whether Elizabeth acted without probable cause in informing arresting officers of McIlwain's alleged violation of the DVO—and factor four—whether the underlying proceeding terminated in McIlwain's favor—are at issue here.

- 10 -

First, McIlwain failed to allege facts sufficient to show that Elizabeth acted without probable cause. Under Kentucky law, a general stipulation to probable cause in the underlying proceeding forecloses an individual's later malicious prosecution claim. *Broaddus v. Campbell*, 911 S.W.2d 281, 283–84 (Ky. Ct. App. 1995). In *Broaddus*, the Kentucky Court of Appeals affirmed the dismissal of a malicious prosecution action in part because the plaintiff stipulated to probable cause in the underlying action. *Id.* at 284. Even though the plaintiff "strenuously contend[ed] that it was his intent" that the stipulation did not extend to the defendant in the malicious prosecution case, the *Broaddus* court found no such limitation and explained that it would have been easy to construct the stipulation to reflect this type of limitation. *Id.*

Here, McIlwain was arrested and charged with violating the DVO after Elizabeth informed courthouse sheriffs of the suspected violation. The charge against McIlwain was dismissed after he stipulated to probable cause. Despite McIlwain's assertions to the contrary, the state court dismissal reflects no limitation on the probable cause stipulation. The court is permitted to consider this state court record because it is a public record, it was attached to the Dodds' motion to dismiss, it is central to the alleged claims, and the dismissal is referred to in the complaint. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Additionally, when a document in the pleadings contradicts facts alleged in the complaint, the document prevails. *In re Flint Water Cases*, 960 F.3d 303, 329 (6th Cir. 2020). Here, the state court dismissal reflects no limitations on McIlwain's probable cause stipulation, making the facts of his case nearly identical to those in *Broaddus*. Thus, under Kentucky law, McIlwain has failed to establish that Elizabeth acted without probable cause in alerting the sheriffs to the suspected violation of the DVO.

Because we conclude that the general stipulation to probable cause forecloses the malicious prosecution claim under *Broaddus*, we do not consider whether McIlwain's allegations that Elizabeth and Berry were "lying in wait" at the courthouse would establish that Elizabeth acted without probable cause.

Irrespective of probable cause, McIlwain fails to allege a claim for malicious prosecution because he cannot establish that the underlying proceedings terminated in his favor. The *Broaddus* court held "that as a matter of law one may not elect to settle a criminal action, stipulate probable cause and maintain that the action was favorable to him on the merits." *Broaddus*, 911 S.W.2d at 285. The court rested its reasoning on the Second Restatement of Torts, which explains that a dismissal resulting from compromise does not qualify as a favorable termination for the purposes of a malicious prosecution action because dismissal by compromise leaves open the question of the accused's guilt or innocence. *Id.* at 284–85 (citing Restatement (Second) of Torts § 660 (Am. L. Inst. 1977)). Here, the charges against McIlwain were dismissed following his stipulation to probable cause. This is precisely the type of dismissal that the *Broaddus* court determined was insufficient to establish that the underlying proceedings terminated in the plaintiff's favor, and thus foreclosed a malicious prosecution claim.

We are not persuaded by McIlwain's argument that, following the Supreme Court's decision in *Thompson v. Clark*, 142 S. Ct. 1332 (2022), a plaintiff only needs to show a termination other than conviction to establish favorable termination. The Supreme Court's holding in *Thompson* applies narrowly to Fourth Amendment claims under 42 U.S.C. § 1983 alleging malicious prosecution. 142 S. Ct. at 1337. It is true that the Supreme Court examined analogous state malicious prosecution claims as these claims existed in 1871 to guide its interpretation of Fourth Amendment malicious prosecution claims brought under § 1983. *Id.* at 1338–40. But, the

Court did so only to decide the "narrow dispute" in front of it and to discern "the elements of a constitutional claim under § 1983." *Id.* at 1337. Here, McIlwain brought his malicious prosecution claim pursuant to state tort law against private individuals, not under federal law against state actors. So, *Thompson*'s narrow holding does not extend to McIlwain's case.

McIlwain did not sufficiently allege essential elements of his malicious prosecution claim: namely, that Elizabeth acted without probable cause and that the underlying proceeding terminated in his favor. We affirm the district court's dismissal of this claim.

### 2. *Intentional Infliction of Emotional Distress*

In Kentucky, to prevail on a claim for intentional infliction of emotional distress, a plaintiff must prove that (1) the wrongdoer's conduct was intentional or reckless; (2) this conduct was outrageous, intolerable, and offended standards of decency; (3) this conduct caused the plaintiff's emotional distress; and (4) the emotional distress suffered was severe. *Osborne v. Payne*, 31 S.W.3d 911, 913–14 (Ky. 2000).

The district court found that "fabricating violations of domestic restraining orders and falsely accusing plaintiff of child abuse" does not qualify as extreme and outrageous conduct. (Op. & Order, R. 25, PageID 339 (quoting Am. Compl., R. 24-2, PageID 313).) We disagree.

Kentucky courts have found the following to be examples of extreme and outrageous conduct: (1) continuous surveilling of a woman, making threats to put her husband in jail, and driving so as to force her car into oncoming traffic; (2) intentionally failing to warn a plaintiff that a building in which he was working contained asbestos; (3) sale of a plaintiff's beloved horses for slaughter after agreeing to care for the horses; (4) repeatedly subjecting a plaintiff to daily racial indignities over seven years; and (5) engaging in a carefully constructed plan involving fraud, deceit, and slander. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 789–90 (Ky. 2004)

(collecting cases), *overruled on other grounds by Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014). In contrast, Kentucky courts have determined the following conduct did not rise to the level of extreme and outrageous behavior: (1) refusing to pay medical expenses following a worker's compensation claim; (2) negligently permitting a vehicle to leave the road resulting in the death of a child; (3) telling a patient to "shut up" following the death of her stillborn child; and (4) displaying a "billboard referencing defendant's status as a convicted child molester." *Id.* at 790–91 (collecting cases).

The district court relied particularly on the latter two examples in reaching its determination here. *Allen v. Clemons*, 920 S.W.2d 884 (Ky. Ct. App. 1996), the case involving the sign referencing an individual's conviction for child sexual abuse, is the most analogous to the present matter. But the *Allen* court's determination that displaying the sign was not extreme or outrageous relied on the fact that the individual's conviction for child sexual abuse was public information and had previously been discussed by local news outlets. *Allen*, 920 S.W.2d at 886.

Unlike in *Allen*, there is no evidence here that McIlwain was criminally charged with or convicted of child abuse. Indeed, McIlwain asserted that the Kentucky Cabinet for Health and Family Services dismissed a Child Protective Service complaint against him. Here, McIlwain alleges that Elizabeth and Berry *fabricated* claims of sexual child abuse. Accepting these statements as true, as we must during a 12(b)(6) analysis, McIlwain's amended complaint does allege facts sufficient to establish extreme and outrageous conduct.

But McIlwain did not adequately plead severe emotional distress. His amended complaint does nothing more than restate this element of the tort without providing any additional factual support, which is insufficient. *See Iqbal*, 556 U.S. at 678. Though custody proceedings

undoubtedly can cause emotional distress, McIlwain provides no facts that demonstrate how any emotional distress has manifested, nor that this distress is severe.

In sum, while we disagree with the district court's determination regarding extreme and outrageous conduct, we affirm the district court's denial of the motion to amend as futile because McIlwain failed to allege facts to support severe emotional distress.

## C. *Rooker-Feldman* Doctrine

Finally, the Dodds reassert their argument that the *Rooker-Feldman* doctrine prevents federal jurisdiction over this matter. McIlwain responded that this argument was waived because it was not cross appealed. But were we to dismiss the suit due to a lack of jurisdiction under *Rooker-Feldman*, it would merely be an alternate ground for dismissal. Ruling on these grounds would neither enlarge the Dodds' rights nor diminish McIlwain's rights under the judgment, meaning that a cross-appeal would be unnecessary. *See Smith v. Kentucky State Univ.*, 97 F. App'x 22, 25–26 (6th Cir. 2004); *see also Bullard v. Sercon Corp.*, 846 F.2d 463, 467–68 (7th Cir. 1988) (explaining that appellees defending the dismissal of the action have not been required to cross-appeal additional jurisdictional arguments); 15A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3904 (3d ed. Sept. 2022 update).

Even so, the district court was correct that the present matter does not fall within the narrow boundaries of the *Rooker-Feldman* doctrine. In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, the Supreme Court limited the *Rooker-Feldman* doctrine's applicability to cases that mirrored the procedural posture of the cases from which the doctrine originated. 544 U.S. 280, 291–93 (2005). The doctrine only applies to cases where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Id.* at 291. Here, McIlwain does not ask this court

to review a state court judgment, nor does he claim that his injuries arise from a state court judgment. Rather, his asserted injuries arise from the allegedly impermissible actions taken by the Dodds in connection with their representation of Berry. Thus, the *Rooker-Feldman* doctrine does not bar McIlwain's claims.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of the Dodds' motion to dismiss and its denial of McIlwain's motion to amend.