RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0197p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

GRAND TRAVERSE BAND OF OTTAWA AND CHIPPEWA
INDIANS; GRAND TRAVERSE BAND OF OTTAWA AND
CHIPPEWA INDIANS EMPLOYEE WELFARE FUND,

                 *Plaintiffs-Appellants*,

    *v.*

BLUE CROSS BLUE SHIELD OF MICHIGAN,

                 *Defendant-Appellee*.

No. 24-1367

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Ann Arbor.
No. 5:14-cv-11349—Judith E. Levy, District Judge.

Argued: December 12, 2024

Decided and Filed: July 28, 2025

Before: BATCHELDER, MOORE, and BUSH, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:** Perrin Rynders, VARNUM LLP, Grand Rapids, Michigan, for Appellants. Phillip J. DeRosier, DICKINSON WRIGHT PLLC, Detroit, Michigan, for Appellee. **ON BRIEF:** Perrin Rynders, Herman D. Hofman, VARNUM LLP, Grand Rapids, Michigan, for Appellants. Phillip J. DeRosier, DICKINSON WRIGHT PLLC, Detroit, Michigan, Scott R. Knapp, Brandon C. Hubbard, DICKINSON WRIGHT PLLC, Lansing, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

JOHN K. BUSH, Circuit Judge. The Grand Traverse Band of Ottawa and Chippewa Indians (Grand Traverse Band or the Tribe) and its employee welfare plan (the Plan) allege that

Blue Cross Blue Shield of Michigan (Blue Cross) breached fiduciary duties owed to the Tribe under the Employee Retirement Income Security Act (ERISA) and related duties under Michigan state law. According to the amended complaint, Blue Cross submitted false claims to the Tribe, causing the Tribe to overpay for hospital services received by its members and employees. On appeal, the Tribe challenges the district court's (1) dismissal of its ERISA and common-law claims, (2) grant of summary judgment to Blue Cross on the Michigan Health Care False Claims Act (HCFCA) claim, and (3) denial of the Tribe's motion for leave to amend its complaint a second time. For the reasons set forth below, we **AFFIRM**.

**I.**

Grand Traverse Band is a federally recognized Indian Tribe. Its Plan is a self-funded employee and member welfare plan that pays claims from health care providers for covered services provided to the Plan's participants. The Plan covers three groups: (1) Group # 01019, consisting of Tribe members who are employees of the Tribe (Employee Group); (2) Group # 01020, consisting of Tribe members who are not employees of the Tribe (Member Group); and (3) Group # 48571, consisting of Tribe employees who are not Tribe members. The two policies of the Plan relevant to this appeal are for the Employee Group (# 01019) and the Member Group (# 01020).

Grand Traverse Band, the Plan, and Blue Cross began their business relationship in 2000, when they signed an agreement known as the Administrative Services Contract (ASC). The ASC specifically mandates (as alleged in the amended complaint) that, "[f]or each claim for payment presented by a medical provider for services rendered to a Plan participant (or dependent)," Blue Cross is "responsible for determining whether or not the claim should be paid for by" the Tribe and the Plan "and, if so, how much the medical provider would be paid from Plan funds." R. 90, Am. Compl. ¶ 3, PageID 2539. In short, the ASC tasked Blue Cross with the processing and payment of claims for all Tribe groups under the Plan. The agreement also triggered a fiduciary duty, wherein Blue Cross was to, among other things, preserve Plan assets and administer the Plan with the skill and care of a prudent person.

In 2007, the federal government released new federal regulations implementing § 506 of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, codified at 42 U.S.C. § 1395cc.  These new rules pertain to what is known as the Medicare-Like Rate (MLR). *See generally* 42 C.F.R. §§ 136.30–136.32.  Relevant here, these MLR regulations require Medicare-participating hospitals to accept payment not to exceed the corresponding Medicare rate, so long as the services are approved by a federally recognized tribe operating a Contract Health Service (CHS) program on behalf of the Indian Health Service (IHS).  *See id.* § 136.30(a)–(b).  Furthermore, "if an amount has been negotiated with the hospital or its agent," the Tribe is to pay "the lesser of" MLR or the negotiated amount.  *Id.* § 136.30(f).  Because of the MLR regulations, Medicare-participating hospitals must accept MLR or lower contracted rates for services provided to participants in any health plans operated by the Grand Traverse Band through the IHS's contract health service program.  *See id.* § 136.30(a)–(b), (f). And for purposes of the MLR regulations, a qualifying plan includes a "contract health service [] program of the Indian Health Service []"; "a Tribe or Tribal organization carrying out a CHS program of the IHS"; or "an urban Indian organization[.]"  *Id.* § 136.30(b).

After the new regulations went into effect, the Tribe "asked [Blue Cross] to ensure that Plaintiffs were obtaining Medicare-Like Rate discounts" on eligible claims.  R. 90, Am. Compl. ¶ 50, PageID 2551.  Blue Cross replied that "it could not adjust its entire system to calculate MLR on those claims eligible for MLR discounts."  *Id.* ¶ 51, PageID 2552.  Instead, Blue Cross allegedly promised that it "could provide" the Tribe "a rate which . . . would be 'close to that which would be payable under the New Regulations' by providing a discount on Plaintiffs' claims for hospital services at Munson Medical Center" for the Member Group only.  *Id.*  Grand Traverse Band claims it relied on this representation when it negotiated and entered into the Facility Claims Processing Agreement (FCPA) with Blue Cross and Munson, "whereby [Blue Cross] agreed to process Plaintiffs' claims for services at Munson at a discount . . . on top of the [Blue Cross] standard contractual rate."  *Id.* ¶ 52, PageID 2552.

The FCPA included the following pertinent recitals: "WHEREAS, effective July 5, 2007, new regulations found at 42 CFR 136.30-136.32 [called the "New Regulations"] went into effect that provide that a Medicare-participating hospital must accept as payment in full no more than

the rates of payment" under the New Regulations' MLR calculation; "WHEREAS, questions have been raised as to the applicability of the New Regulations in the . . . context" of the agreement for Blue Cross's administration of the Tribe's Member Plan; and "WHEREAS, [Blue Cross] is willing to accommodate the desire of both Munson and [the Tribe] by processing claims by Enrollees for services at Munson Medical Center at a price they believe is close to that which would be payable under the New Regulations." R. 90-4, FCPA, PageID 2589. The FCPA also stated that "[t]he Parties agree that [Blue Cross] shall process Munson Claims in the normal course of business using the [Blue Cross] Rate [that is, the contracted network rate] and then" apply a percentage discount, initially set at 8%, but to be calculated annually by a formula set forth in the agreement. *See id*. at PageID 2590.

In 2012, Grand Traverse Band sought a third-party audit to "obtain a comparison of the costs of going with a different third-party administrator." R. 90, Am. Compl. ¶ 56, PageID 2552. The Tribe alleges that this audit revealed that Blue Cross had been overpaying on claims eligible for MLR and that the FCPA discount was nowhere near the amount that would be payable under the federal regulations. The Tribe contends that Blue Cross breached its duty of care by failing to preserve plan assets when it deliberately chose not to capitalize on available discounts on eligible claims. Important to the survival of its claims, Grand Traverse Band alleges it "did not discover the full extent of" Blue Cross's conduct until 2013. *Id.* ¶ 70, PageID 2555. Soon after this realization, the Tribe filed suit, alleging breach of fiduciary duty under ERISA and a handful of supplemental state-law claims.

The Tribe filed its initial complaint on April 1, 2014. Nearly two years later, in January 2016, Blue Cross moved for judgment on the pleadings, which the district court granted in part, dismissing the ERISA breach of fiduciary duty claim with prejudice. Then, in January 2017, the Tribe filed its First Amended Complaint, alleging (i) breach of fiduciary duty under ERISA, 29 U.S.C. § 1001 *et seq*.; (ii) violations of Michigan's HCFCA, Mich. Comp. Laws § 752.1001, *et seq.*; (iii) breach of contract and the covenant of good faith and fair dealing; (iv) breach of common-law fiduciary duty; (v) fraud/misrepresentation; and (vi) silent fraud. This revised pleading remains the operative complaint.

Blue Cross moved to dismiss the amended complaint, and the district court granted the motion in part. The court dismissed the Tribe's ERISA claim as time-barred under the statute of limitations, its fraud and silent fraud claims as duplicative of breach of contract, and part of the Tribe's breach-of-contract claim for failure to adequately allege a violation of the covenant of good faith and fair dealing.[1] Also, by agreement of the parties, the court dismissed the Tribe's HCFCA and common-law breach-of-fiduciary-duty claims as preempted by ERISA.

The district court denied the Tribe's motions for reconsideration and for leave to file a second amended complaint. But after our court decided *Saginaw Chippewa Indian Tribe of Michigan v. Blue Cross Blue Shield of Michigan,* the parties agreed to restore the Tribe's HCFCA claim and common-law fiduciary claim *only* as to the Member Group given our holding that similar claims related to tribal member groups were not preempted by ERISA. 748 F. App'x 12, 19 (6th Cir. 2018) (*SCIT I*).

Blue Cross then moved to dismiss the reinstated claims, and the district court granted the motion in part and denied it in part. The court dismissed as time-barred the common-law fiduciary-duty claim but allowed the HCFCA claim to move forward. After three more years of litigation, the parties filed cross motions for partial summary judgment on the HCFCA claim, and the court granted Blue Cross's motion, denying the Tribe's motion. The Tribe moved for reconsideration of the district court's order, but the court denied the motion. Because the HCFCA claim was the lone remaining claim, the grant of summary judgment to Blue Cross constituted final judgment.

## II.

As noted, the Tribe raises three issues in its timely appeal: that the district court erred in (1) dismissing its ERISA and common-law breach-of-fiduciary-duty claims as time-barred; (2) granting summary judgment to Blue Cross on the HCFCA claim; and (3) denying the Tribe's motion for leave to amend its complaint a second time.

---

[1]In 2022, the parties settled the Tribe's remaining breach-of-contract claim arising from the FCPA.

We review de novo the district court's decision granting Blue Cross's motions to dismiss. *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1037 (6th Cir. 2024). We construe the facts in the light most favorable to Grand Traverse Band, accept the allegations as true, and draw all reasonable inferences in the Tribe's favor. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016). "Against that backdrop, we ask whether the complaint contains sufficient factual matter to state a claim to relief that is plausible on its face." *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 758 (6th Cir. 2020) (cleaned up).

We also review de novo the district court's decision to grant Blue Cross's motion for partial summary judgment and to deny the Tribe's similar motion. *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022). Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, no genuine dispute of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986). The movant bears the initial burden of showing no dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If successful, the burden shifts to the non-movant to present facts showing a genuine issue exists for trial. *Anderson*, 477 U.S. at 250.

Lastly, we review de novo the district court's decision, based on futility of amendment, to deny the Tribe's motion for leave to amend the complaint a second time under Federal Rule of Civil Procedure 15(a)(2). *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014).

**III.**

The amended complaint advances two related but distinct theories. For its fiduciary-duty claims, Grand Traverse Band alleges that Blue Cross breached its obligations under ERISA and common law by failing to act prudently, preserve plan assets, and act solely in the interest of beneficiaries—specifically by ignoring a cost-saving opportunity through MLR. At the same time, and pertinent to its HCFCA claim, many of the Tribe's allegations rest on the assumption

that Blue Cross was legally required to apply MLR and violated the applicable regulations by not doing so.

We have little precedent to guide our analysis, but two cases are relevant. In *SCIT I*, this court held that an Indian Tribe had stated a viable ERISA breach-of-fiduciary-duty claim through allegations that its third-party administrator, Blue Cross, overpaid medical claims by failing to apply MLR discounts. 748 F. App'x at 20. We rejected the notion that ERISA fiduciary duties are confined solely to the plan's terms and cannot account for external cost-saving opportunities. *Id.* at 20–21. Instead, we found that the plaintiff Tribe's claim in that case arose directly from ERISA's duty to act prudently and preserve plan assets. *Id.* At the pleading stage, those allegations were sufficient to survive dismissal. *Id.* at 21–22; *cf. Tiara Yachts, Inc. v. Blue Cross Blue Shield of Mich.*, 138 F.4th 457 (6th Cir. 2025) (reversing the district court's dismissal of self-funded healthcare benefits plan sponsor's claim for breach of fiduciary duty under ERISA, where the plaintiff alleged, among other things, Blue Cross was overpaying on some categories of claims).

Four years later, we reinforced and expanded that reasoning in *Saginaw Chippewa Indian Tribe of Michigan v. Blue Cross Blue Shield of Michigan*, 32 F.4th 548 (6th Cir. 2022) (*SCIT II*). There, the question was whether MLR is categorically unavailable when services are authorized under an Indian Tribe's CHS program but paid through Blue Cross insurance plans. The *SCIT II* district court said yes—MLR applies only when services are paid with CHS funds. *Id.* at 557. We disagreed, holding that MLR eligibility turned on whether the Tribe in that case authorized the services under its CHS program—not the source of payment. *Id.* at 561. As a result, we reversed and remanded for the district court to consider the facts in light of the holding that MLR was available to the Tribe on eligible claims. *Id.* at 565.

Together, *SCIT I* and *SCIT II* establish two principles applicable here: first, a Tribe may state a viable ERISA fiduciary duty claim by alleging that a plan administrator failed to pursue available MLR discounts; and second, MLR eligibility depends on whether care was authorized under a CHS program—not on whether CHS funds were the direct source of payment. These

cases provide useful guidance to an extent but leave unanswered one other legal issue presented in this case: whether MLR obligations apply to Blue Cross.

With that background, we proceed to Grand Traverse Band's claims.

## A.  Breach of Fiduciary Duty

Our analysis of the ERISA and common-law fiduciary-duty claims starts and ends with timeliness.  As an initial matter, the Tribe argues that *SCIT II* controls our decision here and mandates reversal.  It argues that we should reverse because in a nearly identical case involving the same defendant, same underlying conduct, and same claim, this court held that that questions about when the plaintiff Tribe had actual knowledge of the breach and whether Blue Cross concealed its actions created a genuine dispute of material fact over the statute of limitations.

Grand Traverse Band's reliance on *SCIT II* is misplaced.  The Tribe selectively quotes from the court's opinion for its benefit, misstating *SCIT II*'s holding.  Contrary to the Tribe's reading, we refrained from answering the statute of limitations question and instead sent the case back to the district court to resolve the issue in the first instance after correcting its legal error related to the applicability of MLR.  *See SCIT II*, 42 F.4th at 565.  We noted that the district court had incorrectly "concluded that the MLR regulations were inapplicable to services under the Employee and Member Plans," and that it must first "parse the complicated factual record to determine when the Tribe had actual knowledge of the breach and whether Blue Cross's actions amounted to fraud or concealment."  *Id.*

Significant for our decision here, *SCIT II* can be distinguished because it arose in the context of a summary judgment record where the statute-of-limitations issue was not conclusively resolved.  That is not the case for Grand Traverse Band's fiduciary-duty claims.  Both of the Tribe's claims were dismissed at the pleading stage because the fatal defect appears on the face of the amended pleading: the Tribe knew by 2009 that it was not receiving MLR.  As will be explained, that factual concession is dispositive under both ERISA and Michigan law.

All said, *SCIT I* and *II* established that MLR is legally available for Blue Cross to pursue on behalf of Tribes and that Blue Cross's alleged failure to do so can give rise to a claim for

breach of fiduciary duty.  That is firmly established and is not in dispute.  The problem for Grand Traverse Band's fiduciary-duty claims is not a legal one—it's a factual one.

### i.   ERISA

Depending on the circumstances, ERISA provides either a six- or a three-year limitations period for claims of breach of fiduciary duty.  29 U.S.C. § 1113.  A claim is timely if filed within "six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation."  *Id.* § 1113(1).  But a plaintiff becomes subject to an accelerated three-year limitations period as of "the earliest date on which the plaintiff had actual knowledge of the breach or violation, except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation."  *Id.* § 1113(2).

Grand Traverse Band alleges that Blue Cross breached its fiduciary duty of care under ERISA by failing to act as a prudent person, preserve Plan assets, and act for the exclusive purpose of providing benefits to its beneficiaries when it failed to pursue MLR on eligible claims.  The district court recognized as much, holding that "it is plausible that, in deciding whether to pay claims and whether the negotiated rate should apply, [Blue Cross] should have requested the provider accept MLR as payment in full as an 'ordinary and natural means' of preserving plan assets and providing benefits to plan beneficiaries."  R. 99, Op. & Order, PageID 2928–29.  But the district court nonetheless dismissed the ERISA claim based on the three-year statute of limitations.  Because Grand Traverse Band knew that it was not receiving MLR in 2009, the Tribe needed to bring its fiduciary-duty claims by 2012.  The suit was not brought until 2014, so the Tribe's ERISA claim is time-barred.

On appeal, Grand Traverse Band contends that the district court erred in its statute-of-limitations ruling because, even if the Tribe knew in 2009 that it was not receiving MLR, it did not have actual knowledge that the rates were not "close to" MLR (as Blue Cross had allegedly promised) until the 2013 audit.  Blue Cross responds that the district court correctly dismissed the claim as untimely because Grand Traverse Band's own admissions demonstrate that it had

"actual knowledge" that Blue Cross was not pursuing MLR in 2009. Indeed, Blue Cross emphasizes that the Tribe entered into the FCPA because Blue Cross explicitly told the Tribe "that it could not adjust its entire system to calculate MLR" on claims eligible for those discounts. R. 90, Am. Compl. ¶ 51, PageID 2552. At that point, Blue Cross argues, Grand Traverse Band had the requisite knowledge of the fact underlying its breach-of-fiduciary-duty claim: that Blue Cross "[failed] to take advantage of MLR discounts available to Plaintiffs when processing claims for payment[.]" *Id.* ¶ 10, PageID 2541.

We agree with Blue Cross. In 2020, the Supreme Court clarified the meaning of "actual knowledge" under 29 U.S.C. § 1113(2). *See Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178 (2020). The Court first stated that "actual" means "existing in fact or reality" and knowledge means "the fact or condition of being aware of something." *Id.* at 184 (quoting Webster's Seventh New Collegiate Dictionary 10, 469 (1967)). Thus, to satisfy § 1113(2), a plaintiff must "in fact be aware of" the relevant information; it is not enough that the information was disclosed or made available. *Id.* at 184, 186–87. The Court also distinguished "actual knowledge" from "constructive knowledge," which is based on what a reasonably diligent person would have known or learned. *Id.* at 184–85. And it rejected the argument that receipt of disclosures alone establishes actual knowledge, emphasizing that such an interpretation would improperly transform § 1113(2) into a constructive knowledge standard. *Id.* at 187.

Although the district court here did not have the chance to consider *Sulyma* because that opinion came down three years after the district court's order dismissing the claim, the district court correctly applied the actual knowledge standard to the facts of this case. At the point of its decision, the controlling circuit precedent was (and still is) *Wright v. Heyne*, 349 F.3d 321 (6th Cir. 2003). *Wright* described the "actual knowledge" standard as sitting somewhere between knowing "every last detail" and "something was awry," and emphasized the important distinction between constructive and actual knowledge. *Id.* at 329 (quoting *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992)). That description is not inconsistent with *Sulyma*. Under *Wright*, a plaintiff need not "have actual knowledge that the facts establish a cognizable legal claim under ERISA to trigger the running of the statute"; a

plaintiff need only have "knowledge of the facts or transaction that constituted the alleged violation" to trigger the statute of limitations. *Id.* at 330.

Here, as early as 2009, Grand Traverse Band had actual knowledge of the relevant facts supporting its ERISA breach-of-fiduciary-duty claim—that is, Blue Cross's "failure to take advantage of MLR discounts available to" the Tribe. R. 90, Am. Compl., ¶¶ 10, 51, PageID 2541–42, 2552. For that reason, the Tribe had to bring the claim by 2012. The amended complaint, as framed, supports no other conclusion. That pleading itself acknowledges that Blue Cross informed the Tribe that system-wide changes to apply MLR discounts were not feasible. In response, according to the amended complaint, the parties negotiated a new agreement—the FCPA—based on Blue Cross's representation that it could provide rates at Munson Medical "close to that which would be payable under the New Regulations" for the Member Group only. *Id.* ¶ 51, PageID 2552. This admission alone evinces Grand Traverse Band's knowledge that Blue Cross was not applying MLR discounts and would not do so going forward.

The Tribe's knowledge was not "hypothetical" or "theoretical." *Sulyma,* 589 U.S at 185 (quoting Black's Law Dictionary 53 (4th ed. 1951)). Because of how the Tribe chose to frame its claim, Blue Cross's failure to pursue MLR discounts forms the basis of its claim and constitutes the only "relevant fact," *Wright*, 249 F.3d at 328, that triggered the statute of limitations. The face of the amended complaint thus confirms Grand Traverse Band's knowledge in 2009. Because the Tribe cannot change when it learned of Blue Cross's conduct, its claim for breach of fiduciary duty under ERISA is untimely.

Grand Traverse Band advances two arguments to the contrary. Neither persuades us. First, it attempts to recast its claim as an ongoing breach, contending that Blue Cross's continued failure to capitalize on MLR discounts harmed plan assets. But the Tribe identifies no allegation in the amended complaint or elsewhere suggesting that it had reason to believe Blue Cross was ever pursuing MLR discounts. Nor does it allege that Blue Cross offered any assurance that it would begin seeking such discounts in the future. In fact, the opposite is true: Grand Traverse Band negotiated the FCPA with the understanding that it would receive rates "close to" (but not equivalent to) MLR. Absent additional allegations—such as later promises or conduct indicating

a change in Blue Cross's position—the Tribe cannot now disavow what it plainly knew. Its own allegations establish that in 2009, it had actual knowledge of Blue Cross's refusal to pursue MLR. That knowledge forecloses any argument that the Tribe was unaware of Blue Cross's failure to pursue MLR before 2013.

Second, Grand Traverse Band argues that the statute of limitations should be tolled based on fraud or concealment because Blue Cross allegedly provided misleading information about payment rates and their relationship to MLR. But as we've explained, the Tribe concedes it knew from the outset that it was not receiving MLR. And the Tribe admits Medicare-Like Rates are known to be "significantly lower" than contractual rates. *See* R. 90, Am. Compl. ¶ 6, PageID 2540; *SCIT I*, 748 F. App'x at 20. The only allegedly concealed information was that the margin between MLR and Blue Cross's rates was greater than expected. That alleged discrepancy is relevant to the FCPA, but that agreement applies only to the Tribe's Member Plan not covered by ERISA. Thus, even if misrepresentations occurred, they relate to a contract outside the scope of ERISA and cannot revive the Tribe's federal fiduciary-duty claim.

Because Grand Traverse Band had actual knowledge in 2009 of the very conduct that forms the basis of its claim, and because it has alleged no facts that would toll the limitations period, its ERISA fiduciary-duty claim is time-barred.

### ii. Common Law

The Tribe advances the same arguments in support of its common-law fiduciary-duty claim as it does for its ERISA claim, and it does not dispute that the duties owed are identical.

Although, for statute of limitations purposes, Michigan's knowledge standard for common-law breach of fiduciary duty differs slightly from ERISA's, it does not help the Tribe. Michigan applies a three-year statute of limitations to fiduciary-duty claims. Mich. Comp. Laws § 600.5805(2). But, if a person who is or may be liable for a claim fraudulently conceals the claim or the identity of a liable party, a two-year statute of limitations begins to run when the prospective plaintiff discovers or should have discovered the existence of the claim or the identity of the liable party. *Id.* § 600.5855. In any case, a claim accrues "when the beneficiary knew *or should have known* of the breach"—an objective standard that asks when the plaintiff

reasonably should have learned of the existence of an injury and its potential cause. *The Meyer and Anna Prentis Fam. Found. v. Barbara Ann Karmanos Cancer Inst.*, 698 N.W.2d 900, 908–09 (Mich. Ct. App. 2005) (citation omitted) (emphasis added). Notably, this standard sits in contrast to ERISA's more exacting "actual knowledge" requirement, as the Supreme Court rejected any attempt to impute knowledge based on what a plaintiff should have known. *See Sulyma*, 589 U.S. at 184–85.

Because the federal claim fails under the stricter ERISA standard, the state law claim must also fail under Michigan's more lenient requirements. The amended complaint makes clear that the Tribe was aware as early as 2009 that it was not receiving MLR for its Employee and Member plans, triggering accrual under Michigan law just as under federal law.

To avoid the statute of limitations, Grand Traverse Band makes a fraudulent-concealment argument, but that argument is unavailing. The Tribe claims that it relied on Blue Cross's false representation that the FCPA rates would be "close to" those payable under the MLR regulations, leading the Tribe to believe that Blue Cross was offering MLR-equivalent rates and preserving plan assets. But the Tribe's common-law claim as alleged is grounded in Blue Cross's failure to apply MLR, not its failure to apply rates "close to" MLR. *See* R. 90, Am. Compl. ¶ 10, PageID 2541–42 ("BCBSM's failure to take advantage of MLR discounts available to Plaintiffs when processing claims for payment was a breach of BCBSM's fiduciary duties."). And, as above, the Tribe knew all along that it was not receiving MLR.

Michigan law also requires more than a misstatement to delay the running of the statute of limitations. It demands that the fraud be "manifested by an affirmative act or misrepresentation." *Prentis*, 698 N.W.2d. at 909. That is, the Tribe "must show that [Blue Cross] engaged in some arrangement or contrivance of an affirmative character designed to prevent subsequent discovery." *Id.* The amended complaint alleges no such scheme. It lacks sufficient facts demonstrating that Blue Cross took affirmative steps to prevent Grand Traverse Band from discovering it was not paying MLR on eligible claims. The Tribe already knew that it was not receiving MLR—that fact was never concealed.

The Tribe also argues that Blue Cross breached its fiduciary obligations by misrepresenting that the FCPA rates were "close to" MLR. Grand Traverse Band advances that theory in an effort to restart the limitations clock. But its argument is legally untenable under Michigan law for two reasons.

First, to the extent the Tribe alleges that Blue Cross failed to honor a contractual promise regarding pricing terms in the FCPA, the claim sounds in contract, not tort. *See Rinaldo's Const. Corp. v. Mich. Bell Tel. Co.*, 559 N.W.2d 647, 658 (Mich. 1997). Under Michigan law, a tort claim—such as for negligence or breach of fiduciary duty—based on a party's performance (or nonperformance) of a contract may proceed only if the defendant owed a legal duty "separate and distinct" from its contractual obligations. *Id.*; *Fultz v. Union-Com. Assocs.*, 683 N.W.2d 587, 593 (Mich. 2004); *DBI Invs., LLC v. Blavin*, 617 F. App'x 374, 381 (6th Cir. 2015). Here, the Tribe claims that Blue Cross committed the tort of breach of fiduciary duty by breaking its contractual promise to obtain rates close to MLR. But that duty arises from the FCPA itself, and the Tribe does not allege a breach of any duty "separate and distinct" from Blue Cross's contractual obligations. *Rinaldo's Const. Corp.*, 559 N.W.2d at 658. Michigan law does not permit recovery in tort for the nonperformance of a contract. *DBI Invs., LLC*, 617 F. App'x at 381 (quoting *Ferrett v. Gen. Motors Corp.*, 475 N.W.2d 243, 247 (Mich. 1991)).

Second, the FCPA did not give rise to any new fiduciary obligations that were not already in effect at the time the parties executed the agreement. Any new fiduciary obligations would arguably restart the limitations clock. But the ASC, which the parties executed in 2000, created Blue Cross's fiduciary duties—not the FCPA. The ASC required Blue Cross to manage the Plan prudently and in the Tribe's best interests. This is the duty that Blue Cross allegedly breached. So the Tribe cannot have its cake and eat it too. It cannot transform its dispute about Blue Cross's alleged breach of the FCPA into a "new" fiduciary-duty breach merely by relabeling the same conduct—namely, rate representations—as tortious misfeasance to revive an otherwise time-barred claim.

Simply put, the amended complaint alleges no fiduciary-duty breach distinct from the conduct the Tribe had long known about and previously addressed through the FCPA itself. We

therefore reject the Tribe's attempt to recharacterize a contract-based dispute as a fiduciary-duty breach to escape the statute of limitations.

* * *

Grand Traverse Band's fiduciary-duty claims fail because of its own allegations about its knowledge in 2009. Because the Tribe knew that it was not receiving MLR and because it has not sufficiently pleaded allegations of fraudulent concealment or distinguished the alleged fiduciary breach from its contractual dispute, its claims are untimely.

## B. HCFCA

Grand Traverse Band also argues that the district court erred in granting summary judgment by misconstruing the basis of its HCFCA claim. According to the Tribe, the court improperly treated the claim as alleging only that Blue Cross violated the statute by submitting claims in excess of MLR, when, in the Tribe's view, the real theory was that Blue Cross misrepresented that its FCPA discount approximated MLR. Grand Traverse Band maintains that those alleged misrepresentations induced it to enter the FCPA agreement and that allegations to this effect were incorporated by reference into its HCFCA count, even if not repeated verbatim. We begin with the "theory of the amended complaint" argument and then turn to the merits.

### i.   *The Tribe's Theory of the Amended Complaint*

We agree with the district court that, at summary judgment, Grand Traverse Band altered the theory that formed the basis of its amended complaint. A plaintiff may not shift its theory of liability at the summary judgment stage in a way that materially alters the pleaded factual basis of its claim and prejudices the opposing party. *See S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327–28 (6th Cir. 2013). Under modern federal pleading standards, although plaintiffs are not rigidly bound to the legal theories attached to their pleaded claims, *see Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014), the opposing party must have "fair notice of the nature and basis or grounds for a claim," *see Sierra Brokerage*, 712 F.3d at 327–28 (quoting *Colonial Refrigerated Trans., Inc., v. Worsham*, 705 F.2d 821, 825 (6th Cir. 1983)). A party may not pivot to a new factual basis for liability after the close of discovery if that change would

prejudice the opposing party.  *Id.*  Neither may a plaintiff "expand her claims to assert new theories . . . in response to summary judgment or on appeal."  *Alexander v. Carter for Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018) (internal citation and brackets omitted).

The amended complaint alleged a narrow theory: that Blue Cross violated the HCFCA by failing to apply MLR rates when required.  It did not assert, within the HCFCA count, that Blue Cross made false representations about the nature of its rates.  Although the amended complaint did "incorporate by reference" all prior allegations, the HCFCA count pleaded a specific factual basis for the claim.  R. 90, Am. Compl. ¶ 74, PageID 2556 ("The amount charged by [Blue Cross] for paying the claims was false because Plaintiffs were not required to pay more than Medicare-Like Rates on a number of claims administered by [Blue Cross].").  Because Blue Cross would not have had sufficient notice that the Tribe intended to proceed on its HCFCA claim under a misrepresentation-based theory, the district court properly declined to consider that theory, limiting the Tribe to the claims it actually pleaded.  *Sierra Brokerage*, 712 F.3d at 327 (citation omitted).

The difference between the two theories is not semantic.  As the district court explained, the amended complaint states that Blue Cross violated the HCFCA because it submitted claims for payment that exceeded MLR.  The revised theory advanced at summary judgment, by contrast, turned on Blue Cross's alleged misstatements about whether its FCPA discount came close to MLR savings.  That shift raised new factual questions about what Blue Cross said, what Grand Traverse Band believed, and what role those statements played in further contract negotiations.

The Tribe responds that its revised theory merely clarified or refined the original claim using facts developed during discovery and that incorporation by reference gave Blue Cross adequate notice.  But Blue Cross was reasonable to read the HCFCA claim as being based on Blue Cross's alleged failure to apply MLR, rather than its alleged misrepresentations about the proximity of the FCPA rates to MLR.  The Tribe reserved the misrepresentation allegations for its fraud-based theories and omitted them from the HCFCA count.  That choice had consequences.

Blue Cross was prejudiced by the Tribe's shift in several respects. First, it had no reason to make arguments regarding the misrepresentation theory's relationship to the HCFCA claim when that theory was absent from the HCFCA count. In fact, the Tribe presented this theory only in its cross motion for summary judgment, well after the close of discovery and after Blue Cross had already filed its own cross motion for summary judgment. Second and relatedly, Blue Cross framed its own summary judgment motion to address the claim as pleaded—whether it submitted false claims by not applying MLR, not whether its claims were false because it made misleading statements during contract negotiations. Third, the misrepresentation theory is not purely a legal issue, but instead raises new fact-intensive questions. Grand Traverse Band's shift at summary judgment altered the factual focus of the case and deprived Blue Cross of the opportunity to respond to that theory. The district court did not err in limiting the Tribe to the theory pleaded in its amended complaint.

### ii. Merits

We turn now to the merits of the pleaded HCFCA claim. Michigan's HCFCA imposes liability upon "[a] person who knowingly presents or causes to be presented a claim which contains a false statement" to a health care corporation or health care insurer.[2] Mich. Comp. Laws § 752.1009. In its amended complaint, Grand Traverse Band alleges that "[t]he amount charged by [Blue Cross] for paying the claims was false because Plaintiffs were not required to pay more than [MLR] on a number of claims administered by [Blue Cross]." R. 90, Am. Compl. ¶ 74, PageID 2556. The district court concluded that this claim rests primarily on the Tribe's assertion that the false statement under § 752.1009 concerns Blue Cross's alleged overcharging on MLR-eligible claims—specifically, that Blue Cross violated the MLR regulations by submitting claims for payment that exceeded the amount the Tribe was entitled to pay under the regulations.

---

[2]We proceed under the assumption—without making a formal determination—that Grand Traverse Band qualifies as a "health care corporation" or "insurer" and thus has statutory standing under the HCFCA. We need not decide that question because the Tribe's claim, as presently framed, does not succeed on the merits.

However, because Grand Traverse Band could not establish that the MLR regulations directly imposed any obligation on Blue Cross, the court concluded that the Tribe could not prove Blue Cross violated the HCFCA by failing to comply with the MLR regulations.

On appeal, Grand Traverse Band does not dispute that, to succeed on its HCFCA claim, it must show Blue Cross violated the MLR regulations.[3]  Rather, it maintains that properly framing the HCFCA claim as one based on Blue Cross's promises and misrepresentations—not its failure to comply with MLR—renders the applicability of MLR regulations irrelevant.  We have already determined that the Tribe may not pursue this unpleaded theory.  Alternatively, the Tribe argues that Blue Cross "violated the HCFCA by impliedly certifying compliance with MLR regulations" and that the district court erred in finding the regulations inapplicable to Blue Cross's misconduct.  Appellant Br. at 47, 51.  Blue Cross, meanwhile, asserts the HCFCA claim fails because Blue Cross was not directly governed by the MLR regulations and therefore could not have presented a "false" claim to the Tribe as provided for in the statute.  Having rejected Grand Traverse Band's first argument about the true nature of its HCFCA claim, we proceed on the assumption that it must establish a regulatory violation.

We agree with the district court that the HCFCA claim fails as a matter of law.  The statute defines a "claim" as "any attempt to cause a health care corporation or health care insurer to make the payment of a health care benefit."  Mich. Comp. Laws § 752.1002(a).  Moreover, a statement is "false" if it is "wholly or partially untrue or deceptive."  *Id.* § 752.1002(c).  And "deceptive" means "making a claim to a health care corporation or health care insurer which contains a statement of fact or which fails to reveal a material fact, which statement or failure leads the health care corporation or health care insurer to believe the represented or suggested state of affair to be other than it actually is."  *Id.* § 752.1002(b).  The Tribe's claim relies on a finding that Blue Cross violated MLR, which would make false the charges to the Tribe in excess of MLR.  The central issue, then, is a legal one: whether the MLR regulations apply to third-party administrators (TPAs) like Blue Cross, rather than just Medicare-accepting hospitals.

---

[3]This was a position it also took in the district court. *See*, R. 196, Summ. J. Op., PageID 5884 ("Plaintiffs do not appear to disagree with Defendant [Blue Cross's] contention that they need to first establish that Defendant [Blue Cross] violated the MLR regulations for Plaintiffs' HCFCA claim to survive summary judgment.").

As always, our interpretation begins with the regulatory text. *Green v. Brennan*, 578 U.S. 547, 553 (2016); *SCIT II*, 32 F.4th at 557. That is the case whether a statute, *see Thompson v. Greenwood*, 507 F.3d 416, 419 (6th Cir. 2007)*,* or a regulation, *Kisor v. Wilkie*, 588 U.S. 558, 574–75 (2019), is at issue. And when the text's meaning is clear, we must give it effect. *See Conn. Nat'l. Bank v. Germain*, 503 U.S. 249, 254 (1992).

The relevant regulations state that "[a]ll Medicare-participating hospitals . . . must accept no more than the rates of payment under the methodology described in this section as payment in full for all terms and services authorized by [Indian Health Service], Tribal, and urban Indian organization entities." 42 C.F.R. § 136.30(a). They include one exception: if the I/T/U[4] has negotiated a rate with the hospital or its agent, then *the I/T/U will pay* the lower of the MLR rate or the negotiated network rate. *Id.* § 136.30(f) (emphasis added).

The district court correctly concluded that the plain language of § 136.30 unambiguously limits the regulations' scope to Medicare-participating hospitals, which are the only entities required to accept MLR as payment for qualifying care. The introductory subsection, § 136.30(a), explicitly references only these hospitals, omitting any mention of TPAs.

What's more, subsections (c) through (e) do not help the Tribe. Although these provisions generally detail how payment shall be made, the passive statements about what Tribes will *pay*, without more, cannot create an affirmative regulatory duty on behalf of payors and administrators to *obtain* MLR, particularly in the face of clear language limiting the scope of the duties imposed by the regulations to Medicare-participating hospitals.

The sole exception to the MLR payment structure also reinforces our conclusion. Under § 136.30(f), if an I/T/U negotiates a separate rate with a hospital or its agent, the I/T/U pays the lesser of the MLR rate or the negotiated rate. This exception speaks exclusively to the relationship between I/T/Us and hospitals (or their agents), not TPAs. The regulations

---

[4]An I/T/U is defined as a "contract health service program of the Indian Health Service," a "Tribe or Tribal organization carrying out a CHS program of the IHS under the Indian Self-Determination and Education Assistance Act," or "an urban Indian organization." *SCIT II*, 32 F.4th at 554 (quoting 42 C.F.R. § 136.30(b)). The parties agree that Grand Traverse Band is an I/T/U and Blue Cross is not.

consistently target the behavior and obligations of hospitals, not intermediaries or agents acting on behalf of I/T/Us, like Blue Cross.

Our other interpretive methods point to the same result. For instance, the canon *expressio unius est exclusio alterius*—the express mention of one thing excludes others—supports the view that the regulations' reference to "Medicare-participating hospitals" and omission of TPAs indicate that only hospitals are subject to the requirements of § 136.30. *See NFP Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369, 383 (6th Cir. 2022).

Likewise, the surrounding regulatory context lends further support. For instance, § 136.32 creates a recovery mechanism for tribal organizations to recoup overpayments or obtain compliance when hospitals fail to honor MLR. But there is no equivalent mechanism for recovering when TPAs or claims administrators fail to honor MLR. If TPAs bore obligations under § 136.30, it would be logical for the regulations to provide an enforcement or recovery process related to their conduct. The absence of such a mechanism underscores their exclusion from the regulatory scheme.

Accordingly, we reject Grand Traverse Band's argument that the regulations should be broadly interpreted to govern the payment of claims for CHS care using tribal plan assets, thereby including Blue Cross as the Tribe's fiduciary.

\* \* \*

The district court was correct to hold that Grand Traverse Band cannot expand or shift the basis of its HCFCA claim at summary judgment without prejudicing Blue Cross, and it properly evaluated the claim under the MLR-based theory pleaded in the complaint. The district court did not err in granting summary judgment to Blue Cross on the HCFCA claim.

## C. Motion for Leave to Amend

Lastly, Grand Traverse Band contends that the district court erred in denying it leave to amend its complaint a second time. We disagree. The procedural history supports this decision.

Recall that the district court granted Blue Cross's motion for judgment on the pleadings, dismissing the ERISA claims (Count I and II in the original complaint) with prejudice. The court then permitted the Tribe to amend the complaint, and the Tribe repleaded its breach-of-fiduciary-duty claim under ERISA, as well as other state law claims not relevant here. But Blue Cross once again prevailed when the district court partially granted its motion to dismiss the First Amended Complaint. Grand Traverse Band then sought leave to amend a second time, arguing that its new allegations were aimed at "present[ing] the additional facts relevant to the *statute of limitations analysis* that the Court did not consider in deciding [Blue Cross's] *motion to dismiss.*" R. 102, Pls.' Mot. for Leave to Amend, PageID 2971 (emphasis added). The district court denied the motion as futile.

Although leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), courts may deny a request if the amendment would be futile. *Williams,* 771 F.3d at 949. An amendment is futile if, even with the proposed changes, the complaint still fails to state a claim under Rule 12(b)(6). *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 617 (6th Cir. 2024).

On appeal, Grand Traverse Band folds its leave-to-amend challenge into its argument for summary judgment on its HCFCA claim, effectively shifting its basis for amendment. Contrary to the Tribe's assertions, the proposed Second Amended Complaint was not aimed at "clarify[ing] the factual predicate" of the HCFCA claim. Appellant Br. at 36. The district court denied the motion for leave to amend for reasons entirely unrelated to the HCFCA claim. So the district court cannot be faulted for failing to grant relief it was never asked to consider. Accordingly, we consider only the question before the district court when it ruled on the Tribe's motion for leave to amend—whether the proposed amendments salvage the ERISA claim. *See Williams,* 771 F.3d at 949.

They do not. An examination of the differences between the First Amended Complaint and the proposed Second Amended Complaint convinces us that the district court was correct to deny leave to amend a second time. For instance, Grand Traverse Band proposed adding an allegation that Blue Cross "has known since before March 1, 2009 that for most health care

services, Medicare-Like Rates are significantly lower than the contractual discounts Blue Cross obtains with hospitals." R. 102-2, Second Am. Compl. ¶ 7, PageID 2989. But it makes no difference whether *Blue Cross* knew that fact; it matters whether and when *Grand Traverse Band* knew that fact. The Tribe's awareness in 2009 that it was not receiving MLR pricing remains fatal to its claim.

Grand Traverse Band also sought to add an allegation that "[Blue Cross] made multiple representations to Plaintiffs that" the company "was working on developing a system to price claims at MLR." R. 102-2, Second Am. Compl. ¶ 10(a)(iv), PageID 2991. But even accepting that as true, the statement does not negate the Tribe's knowledge that it was being overcharged. At best, it was a forward-looking assurance—a statement that, as the district court observed, was incomplete and non-committal. At worst, the statement reaffirmed that MLR pricing was not yet being applied. Absent allegations that Blue Cross had implemented MLR pricing or otherwise concealed key facts, the Tribe's amendments do not cure the deficiencies apparent in its ERISA claim. They are futile, and the district court did not err in denying leave to amend.

**IV.**

For the foregoing reasons, the district court's judgment is **AFFIRMED**.